The judgment is reversed, and the cause remanded.

Long, C. J., and Reeves, J., concur.

---

[No. 351.    January 25, 1889.]

## THOMAS B. CATRON, Plaintiff in Error, v. BOARD OF COUNTY COMMISSIONERS OF SANTE FE COUNTY et al., Defendants in Error.

Taxation—Bill to Restrain Levy and Collection of Taxes—Demurrer—Fraud—Equity.—On a bill in equity, brought by complainant, a taxpayer and resident of Sante Fe county, charging that the county commissioners of said county issued and sold fifty warrants, with interest coupons attached, after the passage of the act of congress of July 30, 1886, limiting the amount of indebtedness which may be contracted by any county in a territory, and antedated them, that it might appear they had been issued on the first day of July, 1886; that, at the time of the actual issue of said warrants, said county was indebted in a sum exceeding in amount four per cent of the value of the taxable property of the county; and that the commissioners threatened to issue more warrants; that the complainant was threatened with a sale of his property to pay taxes to meet the interest on said warrants; and praying for an injunction to restrain defendants from levying a tax for such purpose; to which defendants filed a general demurrer, which was sustained. Held: The facts charged in the bill, which are admitted by the demurrer, clearly show fraud, entitling complainant to equitable relief, although there may be some legal remedy provided; and the demurrer should have been overruled.

ERROR, from a judgment in favor of defendants, to the First Judicial District Court, Santa Fe County. Judgment reversed.

The facts are stated in the opinion of the court.

CATRON, KNAEBEL & CLANCY for plaintiff in error.

The so-called warrants were void. The law under which they were sought to be issued (Session Laws, 1874, chap. 4) provides for the issue of interest-bearing warrants only to pay for the completion of a courthouse, while these were issued and sold to raise funds for the original construction of a courthouse.

The law conferred no authority whatever on the county commissioners. It is wrongfully compiled in section 186 of the Compiled Laws of 1884. The compiler had no authority to revise. The authority conferred by it on the probate judge has never been transferred to any one else either in direct terms or by implication. It was a special act, and not to be considered as affected by any subsequent general statute, unless it was repealed by the act of 1876, section 345, Compiled Laws.

No municipal corporation can, without special statutory or charter authority, issue and sell at a discount, negotiable securities, to raise money for any purpose. Mayor v. Ray, 19 Wall. 475.

They were in fraud of the act of congress of July 30, 1886 (Statute, 1st Sess. 49 Cong. 171), as the county was already indebted to an amount greatly exceeding the limit fixed by that act, and they were issued in August, 1886, and fraudulently antedated July 1, 1886. They could not fall within the exceptions of that statute, as the indebtedness did not exist on the thirtieth day of July, 1886, nor were the so-called warrants, "obligations contracted" or "bonds

already contracted for." See Compiled Laws, secs. 375, 345, 351, 352, 356, 360, 362.

The county board had no power to delegate its discretionary functions, if it had any, to the chairman. Coquard v. Chariton County, 14 Fed. Rep. 203.

The demurrer is not well founded. The complainant has no adequate and complete remedy at law. Ranney v. Bader, 67 Mo. 476; Erskine v. Holmbach, 14 Wall. 613; O'Shaughnessy v. Baxter, 121 Mass. 515; Orr v. Box, 22 Minn. 485; People v. Warren, 5 Hill, 440.

If the complainant sue the county for the recovery of the money which has gone into the hands of public officers, and been paid out, or even misappropriated by them, he may get a judgment for the payment of which a tax must be levied upon himself as well as other taxpayers. Wright v. Dunham, 13 Mich. 414; Withington v. Howard, 8 Cush. 66; Moore v. School Directors, 59 Pa. St. 232. See, also, Balfour v. Portland, 28 Fed. Rep. 740.

If the defendants desire to defend against the application on the ground that taxes really due have not been paid or tendered, then the burden is on them to show the fact by plea or answer and affidavits; and that fact shown, the court should then, not dismiss the bill, but require payment as a condition precedent to granting the injunction. Parmly v. R. R. Companies, 3 Dillon, 34, 35. See, also, State Railroad Tax Cases, 92 U. S. 617; Palmer v. Napoleon, 16 Mich. 177; Hersey v. Milwaukee, 16 Wis. 186; Frazer v. Seibern, 16 Ohio St. 614.

EUGENE A. FISKE for board of county commissioners.

Chapter 4, Session Laws, 1874, New Mexico, is not correctly quoted in plaintiff in error's brief. The material parts of that law, as it originally passed, provided that,

when, "There shall not be sufficient funds in the treasury of any county to complete the erection of any courthouse or jail in said county, and it shall become necessary to issue the warrants of said county or the whole thereof, the probate judge issuing the same may authorize said warrants to draw interest at any rate not exceeding ten per cent per annum," etc. Session Laws, pp. 23, 24.

We disagree with plaintiff in error in his contention that section 186, Compiled Laws, New Mexico, was wrongfully compiled, and that the law is not as stated in that section. Section 4, chapter 56, Session Laws, 1884, p. 181, the act under which this compilation was made, provides that after the compilation was made and had been examined by the attorney general, and published by the governor of the territory in the manner mentioned in the act the laws so compiled "shall be received by all the courts and officers of this territory, and shall in all respects be valid and binding as original enrolled acts approved and filed in the office of the secretary of the territory, as now provided by law."

All the facts necessary to be stated in this or any bill of complaint to authorize the issue of an injunction must be alleged positively, and an injunction can not properly issue in any case upon statements in a bill made upon information and belief only, and without any statement of any sources of such information and belief. High on Inj., secs. 34, 35.

By the laws of this territory the board may establish rules and regulations to govern the transaction of their business, and the chairman of the board alone has the right, under our statute, to sign warrants upon the treasurer. Comp. Laws, N. M., secs. 347, 349.

And the power of the county commissioners to build a courthouse and to issue interest-bearing warrants to pay therefor, is found in sections 186, 345, 349, Compiled Laws, New Mexico, 1884.

Under sections 2863, 2865, Compiled Laws, the county commissioners may upon the application of any party interested refund any tax "found to be erroneous or illegal, whether the same be due to erroneous or improper assessment or improper or irregular levying of the tax," and the judgment of the board upon such matters is by law declared to be final. Having failed to pursue that remedy complainant waived his right to relief in a court of equity. Compiled Laws, N. M. 1887, secs. 2863, 2865, 2841, 345; High on Injunctions, secs. 491, 493, and authorities cited; Session Laws, N. M. 1887, pp. 232, 233, 234; Merrell v. Gorham, 6 Cal. 41, 43; Peoria v. Kidder, 26 Ill. 351, 357, 358; Rio Grande R. R. v. Scanlon, 44 Tex. 649, 661.

The bill was properly dismissed because plaintiff in error did not pay, or tender, to the collector of taxes any part of the taxes admitted in his bill to be due. High on Injunctions, sec. 497; State Railroad Tax Cases, 2 Otto, 575; Hersey v. B. of S. Milwaukee, 16 Wis. 185, 194, 195; Mills v. Johnson, 47 Wis. 598, 603; Bond v. City of Kenosha, 17 Id. 284, 288, 289; Palmer v. Township of Napoleon, 16 Mich. 176; Rio Grande Railroad v. Scanlon, 44 Tex. 651.

Plaintiff in error may refuse to pay the tax, and, if the property be sold for such tax, defend his title at law against the purchaser. Porter et al. v. R., R. I. & S. R'y Co., 76 Ill. 596; High on Inj., secs. 491, 493; Western R'y Co. v. Nolan, 48 N. Y. 519; Hannewinkle v. Georgetown, 15 Wall. 548; Dows v. Chicago, 11 Wall. 108, 112; Van Doren v. Mayor of N. Y., 9 Paige, 390; Robinson v. Gaar, 6 Cal. 275; Youngblood v. Sexton, 32 Mich. 406, 20 Am. Rep. 655; Ware v. Percival, 61 Me. 391, 14 Am. Rep. 566; Tuttle v. Everett, 51 Miss. 27, 24 Am. Rep. 623; City of Louisville v. Anderson, 79 Ky. 334, 42 Am. Rep. 220, 223, 224, 225, 226; Douglass v. Harrisville, 9 West Va. 162, 27 Am. Rep. 551; Delphi v. Bowen, 61 Ind. 29.

In such cases equity will never enjoin simply because the levy is void, but only where the bill shows that the complainant is entitled to relief under some one of the established and recognized grounds of equity jurisdiction in addition to the levy being wholly void. Kilbourne v. St. John, 59 N. Y. 21, 17 Am. Rep. 391-395; Haywood v. Buffalo, 14 N. Y. 534; Susquehanna Bank v. Brown, 25 Id. 312, 314, and cases supra.

Statutes like ours, where the deed issuing upon a tax sale is not conclusive evidence of right in the purchaser, are not to be confounded with such statutes as that of New York, considered in 39 N. Y. 386, 390, where the deed was made by law conclusive evidence of title, and properly held to be a cloud. Cooley on Taxation, 542; Detroit v. Martin, 34 Mich. 170; Hannewinkle v. Georgetown, 15 Wall. 548; Van Rensselaer v. Kidder, 4 Barb. 17, 19; Bouton v. Brooklyn, 15 Barb. 395.

As to multiplicity of suits as a ground for equity cognizance, see Sheldon v. Center School District, 25 Conn. 224; Youngblood v. Sexton, 32 Mich. 406; Dows v. Chicago, 11 Wall. 112; Bouton v. City of Brooklyn, 15 Barb. 390, 395.

The bill must be construed most strongly against the pleader, and if necessary averments are not found therein they can not be presumed. High on Inj., sec. 491; Green v. Coveland, 10 Cal. 317; Dows v. Chicago, 11 Wall. 112.

N. B. LAUGHLIN for Santa Fe county.

The Laws of the Twenty-second Session of the Legislative Assembly, pages 18 to 29, and sections 332 to 378 inclusive, Compiled Laws, 1884, taken together and construed in pari materia, as they must be, there is little, if any, doubt as to the powers of the county commissioners to build and provide proper and suitable courthouse and county buildings; but, as a matter of

abundant caution, the commissioners and probate judge acted together in the matter, and it does seem that element of good faith is shown in the issue of these warrants.

The board did not exceed its powers in authorizing the chairman to procure suitable blanks for the warrants and coupons; and if any irregularity or want of power existed in the board's authorizing him to negotiate the warrants for cash, and apply the proceeds to the purpose named, it was not such as to warrant an injunction, unless fraud appear clearly and plainly on the face of the bill. Kinsey v. Pulaski County, 2 Dillon, 454; Whitewell v. Pulaski County, Id. 249; Britton v. Platte City, Id. 1; Stinson v. Carter County, 23 Fed. Rep. 537.

Should the threatened sale occur, and the collector pass a deed for the real estate of complainant, he has his remedy to defend his title in ejectment, or as against the officer in trespass. Tyler on Eject., 685; Gaines v. Stites, 14 Peters, 322.

Complainant is not entitled to the relief sought until he pays, or makes, a legal tender of the taxes due from him to the county, and about which there is no dispute. "Being able, ready, and willing, and offering to pay," does not constitute such a tender as will entitle the complainant to the relief prayed for. High on Inj., secs. 490, 494, 497.

Before a party can maintain a suit to enjoin the collection of a tax he must first pay what is conceded to be due on the face of the bill, which has not been done in this case. Dundee Mortgage Trust Investment Company v. Parish, 24 Fed. Rep. 197; National Bank v. Kimball, 103 U. S. 723; Huntington v. Palmer, 7 Sawyer, 355: State Railroad Tax Cases, 92 U. S. 617; Parmly v. Railroad Companies, 3 Dillon, 34.

If the law under which warrants were issued is void, rendering the warrants void, as alleged in the bill,

or if the warrants were issued contrary to the act of congress of July 30, 1886, rendering the warrants void in that event, as is also alleged in the bill, and as complainant is seeking relief against a threatened trespass, which may create a cloud on his title, the respondent would be liable in damages in an action at law to the amount of the injury caused by the trespass, and a court of chancery will not interfere by injunction to restrain only a threatened trespass. High on Inj., sec. 496; Mechanics National Bank v. Debolte, 1 Ohio St. 591.

The bill is based on general allegations, which are not sufficient to warrant the relief sought, and the complainant will be left to his remedy at law. High on Inj., sec. 485; Dows v. Chicago, 11 Wall. 108; Cook County v. Railroad, 35 Ill. 465; Bank of Utica v. Utica, 4 Paige, 399; Kilborne v. St. John, 59 N. Y. 21; 17 Am. Rep. 291; 27 Am. Rep. 548; Blackwell on Tax Title, p. 187; 14 Am. Rep. 565.

The complainant failed to pursue his remedy under the statute of the territory, sections 2841, 2863, 2865.

Courts, as a general rule, will not restrain on the bill of only one complainant. Vandever et al. v. Davis et al, 27 Ga. 354; Rules Sup. Ct. N. M., rule 56, p. 43, Equity; Rules of Practice in U. S. Sup. Ct., rule 48, p. 41; Manderville v. Riggs, 2 Pet. 482; 5 Blatch., U. S. Cir. Ct., 525; Campbell v. Railroad Co., 1 Woods, 377; Coann v. Atlanta Cotton Factory Co., 14 Fed. Rep. 4; 2 Woods, 447.

"No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." Sec. 3224, U. S. Rev. Stat., approved May 27, 1872; Comp. Laws, 1884, sec. 522; Kidder v. Bennett, 2 N. M. 37.

The district courts of this territory must conform in their chancery powers to the circuit and district courts of the United States, and the court has no juris-

diction in a case of this kind. U. S. v. Pacific Railroad, 4 Dillon, 66, and authorities cited supra.

BRINKER, J.—On the third day of November, 1887, the plaintiff in error, as complainant, filed in the court below the following bill against the defendants in error:

"To the Hon. Reuben A. Reeves, Associate Justice of the Supreme Court of the Territory of New Mexico and Judge of the First Judicial District Court thereof: Your orator, Thomas B. Catron, a resident of the county of Santa Fe, in the territory of New Mexico, in his own behalf, as well as in behalf of all other taxpayers, owners of property situate in said county, interested in obtaining the relief herein sought, who shall contribute to the expense of this suit, brings this, his bill of complaint, against the board of county commissioners of the county of Santa Fe, Francisco Chavez, sheriff, and ex officio collector of said county, and Nicholas Garcia, treasurer of the said county, all residents of the said county. And thereupon your orator complains and shows that your orator is, and for upwards of ten years last past he has been, a resident and taxpayer of the said county of Santa Fe; that he owns at least as much property subject to taxation in said county as any other individual taxpayer of the said county whatever; that among the property subject to taxation owned by your orator in the said county is all that certain tract or parcel of land, with the improvements thereon, situate in the city of Santa Fe, on the corner formed by the intersection of the easterly side of the plaza of Santa Fe with the southerly side of Palace avenue, and extending upward of one hundred feet along the easterly side of the said plaza, and upward of one hundred feet on the southerly side of Palace avenue, and containing a superficial area exceeding one hundred thousand square feet; that your orator has

always been ready and willing to pay whatever taxes have heretofore been lawfully levied or assessed against his property in the said county, including the tract of land above described, and has always hitherto paid all taxes thereon which he was lawfully bound to pay; and he is now ready and willing to pay whatever taxes may be lawfully leviable and collectible against him or his said property.

"And your orator further shows that heretofore, to wit, on the twentieth day of July, A. D. 1887, the board of county commissioners of the said county levied the taxes for the year 1887 upon the taxable property situate and taxable in the said county, and fixed the rate of taxation upon such levy as follows: For the county fund, twenty-five cents on each one hundred dollars of the assessed valuation of such taxable property; for the territorial fund, fifty cents for each one hundred dollars aforesaid; for the school fund, thirty cents for each one hundred dollars aforesaid; for the interest on funded county bonds, seventeen cents for each one hundred dollars aforesaid; for the interest on county bonds voted and issued in aid of the Texas, Santa Fe & Northern Railroad Company, thirty cents for each one hundred dollars aforesaid; for the interest on county bonds voted and issued in aid of the New Mexico & Southern Pacific Railroad Company, thirty cents for each one hundred dollars aforesaid; for the interest on the courthouse warrants, hereinafter more particularly described, thirteen cents on each one hundred dollars aforesaid; for the interest on capitol building bonds, five cents for each one hundred dollars aforesaid; for the interest on penitentiary bonds, five cents for each one hundred dollars aforesaid; for the interest on capitol contingent bonds, one cent for each one hundred dollars aforesaid—which levy, your orator avers, upon his information and belief, includes the levy for county purposes of the said county of a tax in

excess of one fourth of one per cent on the assessed value of the taxable property taxable in the said county, over and above so much of the said total levy as was so levied as or by the general taxation.

"And your orator further shows that on the said twentieth day of July, A. D. 1887, the existing indebtedness of the said county of Santa Fe greatly exceeded in amount five per cent of the assessed value of the property assessable and taxable within the said county, as found and ascertained by the last assessment for territorial and county taxes made in the said county, being the assessment upon which the said levy was based.

"And your orator further shows that during the year 1886, and in each and every part of the said year, the said county of Santa Fe was indebted in an amount largely exceeding five per cent of the assessed value of all property assessable and taxable within the said county, as found and ascertained by the assessment for territorial and county taxes made in the said county in the year 1885, as well as the said year 1886; and the said county ever since has been, and still is, indebted in an amount greatly exceeding five per cent of the property assessable and taxable therein; and that the said county indebtedness so existing throughout the year 1886, and ever since, in excess of five per cent of the value of the taxable property within the said county, is, and during all and every part of the said period has been, in excess of five per cent aforesaid, without regarding, calculating, or including the indebtedness or any part of the indebtedness assumed to be created, as hereinafter stated, for or in respect of the erection or completion of the courthouse hereinafter mentioned.

"And your orator further shows that the said board of county commissioners, at a meeting thereof held in the county of Santa Fe on the seventh day of June, A. D. 1886, approved and adopted a resolution in the

words and figures following, to wit: 'Whereas, in the opinion of the county commissioners of Santa Fe county, it appears necessary that the United States and territorial district courts be provided with more suitable and comfortable quarters than those now used for that purpose; and, whereas, the counties of San Miguel and Colfax have more commodious and comfortable quarters; and, whereas, it might appear in the opinion of the judges that, owing to the foregoing facts, the United States and district courts and headquarters of the district judge be removed to Las Vegas or Springer. Therefore, be it resolved, that the chairman of the board of county commissioners of Santa Fe county be and is hereby authorized to advertise for plans for a courthouse to be erected in the city and county of Santa Fe; said building to cost not exceeding $50,000; and plan to be filed at a date not later than July 1, 1886, at the office of the board of county commissioners. And at the said meeting the said board ordered advertisement to be made for plans and specifications for such contemplated building.'

"And your orator further shows that thereafter, on the twenty-ninth day of June, A. D. 1886, the said board of county commissioners, at another meeting by them held in the county aforesaid, adopted a certain preamble and resolutions, by which preamble the said board, pretending to recite the said proceedings had as aforesaid, at the said meeting of June 7, 1886, falsely made it to appear that at the said meeting of June 7, 1886, it was deemed necessary that the said board of county commissioners of Santa Fe county advertise for and receive, in the usual manner, bids and proposals for the erection at the county seat of Santa Fe county, and at such location as should be designated by the said board, of a courthouse to be built according to the plans and specifications therefor which should thereafter be selected and adopted by the said board, the

cost of construction, completion, and furnishing there-
of not to exceed the sum of $75,000, and by which
preamble it was declared that there were not sufficient
funds in the treasury of the said county to complete the
erection of the said courthouse in said county, and it
had become necessary to issue warrants of the said
county for the said sum of $75,000, and by which reso-
lution, so adopted at the said meeting of June 29, 1886,
it was resolved that the sum of $50,000 be and was
thereby appropriated by the board of county commis-
sioners of Santa Fe county, N. M. for the purpose of
building, completing, and furnishing as near as possi-
ble, a courthouse for said county; and it was then and
there further resolved, in the words and figures follow-
ing, to wit:   'That county warrants of said county of
the denomination of ――――, bearing date the ―― day
of ―――, A. D. 1886, and running with interest coupons
attached, and bearing interest at the rate of eight per
cent per annum, be issued by this board for the pur-
pose above set forth to the amount of $50,000,' which
resolution was incomplete, and blank on its face; in
the particulars so appearing in the foregoing quotation
thereof.

"And your orator further shows that at a further
meeting of the said board of county commissioners
held on the twentieth day of July, A. D. 1886, in the
said county, the said resolutions so adopted by the said
board as aforesaid on the twenty-ninth day of June, A.
D. 1886, were rescinded, and the said board, acting
then and there jointly with the probate judge of the
said county of Santa Fe, who was then and there pres-
ent, participating with the said board in its proceedings
in that behalf, adopted a certain preamble and resolu-
tions in the words and figures following, to wit:
'Whereas, at a special meeting of the board of county
commissioners of Santa Fe county, N. M., held at the
county seat of said county, and at the office of the

clerk of said county, on the seventh day of June A. D. 1886, the said board of county commissioners of Santa Fe county deemed it necessary and expedient to provide more suitable rooms for county purposes than those heretofore in use; and whereas, at said meeting, it was also deemed necessary, under and by virtue of the powers in them vested by law, to provide for and build, at the county seat of said county, a county courthouse, sufficient and adequate to meet all the requirements and business of said county; and whereas, in order to carry out the purpose set forth in the above recitals, it was deemed necessary that the said board of county commissioners of Santa Fe county advertise for and receive in the usual manner bids and proposals for the erection at the county seat of Santa Fe county, and at such location as shall be designated by the said board, of a court house to be built according to the plans and specifications therefor, which shall hereafter be selected and adopted by the said board, the cost of construction, completion, and furnishing thereof not to exceed the sum of $75,000. Therefore it is ordered and resolved by the said board of county commissioners and the probate judge of the county of Santa Fe, who is present, participating with said board in these proceedings, and concurring in this action, order, and resolution, that, for the purpose of obtaining sufficient funds for the purpose aforesaid, warrants of the said county of Santa Fe be issued in due form of law for the amount necessary for the purpose aforesaid, not exceeding the sum of $75,000; that said warrants be made and issued in and for the sum of —— dollars each, bearing interest at the rate of eight per cent per annum from date until paid. Said interest to be payable on the first day of January and the first day of July of each year; and eight per cent is hereby fixed as the rate of interest on said warrants. And it is further ordered that proper coupons therefor be attached to and issued with such

warrants, and that said warrants be made payable and to become due in twenty years from July 1, 1886, and that they be dated July 1, 1886. And it is further ordered and resolved that the chairman of this board procure the printing of suitable blanks for said warrants and coupons, upon the best obtainable terms, and that said warrants and coupons, respectively, when ready for issue and delivery, be signed by the chairman of this board, and duly attested by the clerk and seal of this board. And it is further ordered and resolved that the chairman of this board be and is hereby authorized and empowered to negotiate and dispose of said warrants for cash, upon the best terms and for the highest price which he can obtain, and to apply the proceeds to the purpose aforesaid,'—which resolutions contain the blank appearing in the foregoing quotation thereof.

"And your orator further shows upon his information and belief that the said board of county commissioners and the said probate judge, or either thereof, had no lawful authority to provide for the erection of a courthouse in manner and form aforesaid, or to create the indebtedness contemplated by the aforesaid resolutions, or to issue, negotiate, or dispose of, or cause to be issued, negotiated, or disposed of, any warrants, obligations, engagements, instruments, or evidences of debt, of the nature, terms, purport, or effect of the warrants or instruments described and specified in the said resolutions, or to delegate to the chairman of the said board of county commissioners the power or authority to negotiate and dispose of such warrants or instruments assumed by the said resolutions to be delegated to and vested in the said chairman.

"And your orator further shows that thereafter, and in the month of August, A. D. 1886, Bernard Seligman, then and still the chairman of the said board of county commissioners, acting under color of the said

resolutions, and the power and authority thereby purporting to be conferred on him in that behalf, caused fifty so-called warrants of the said county of Santa Fe to be printed, with interest coupons thereto attached, each of which instrument so printed bore date, Santa Fe, N. M., July 1, 1886, and provided in terms that the treasurer of the county of Santa Fe was. thereby directed to pay to the bearer one thousand dollars in the gold coin of the United States, for value received, with interest at the rate of eight per cent per annum, payable semiannually on the 1st days of January and July of each year, according to the coupon interest warrants thereto attached; and further provided, that the said interest coupons, or so-called coupon interest warrants, must be surrendered for cancellation upon payment thereof, such payment to be made at the American Exchange National Bank, New York; and further declared upon its face as follows, to wit: 'This warrant is issued to pay for the completion of the erection of a courthouse for Santa Fe county, under the provisions of the laws of the territory of New Mexico relating thereto, and providing for the payment thereof, and is payable twenty years after the date hereof, the county of Santa Fe reserving the option to pay and take up the same at any time after ten years from the date hereof;' and further purporting to bear the seal of the board of county commissioners of the county of Santa Fe, N. M., and the signature of the chairman of the said board, and purporting to be attested by the probate clerk and ex officio clerk of said board of county commissioners, the said so-called warrants being numbered seriatim from one to fifty, both inclusive; and each of the said attached coupons or so-called 'interest warrants' purporting to promise that the treasurer of the county of Santa Fe, N. M., would pay to the bearer thereof forty dollars for interest due on warrant No. —— (meaning the instrument to which such coupon was originally

attached), issued on account of the completion of the
erection of a courthouse for the county of Santa Fe;
and purporting to be signed by the chairman of the
said board of county commissioners, and attested by
the said clerk, and each coupon bearing also the date
of its maturity; a fac simile in blank of which instru-
ment is herewith filed.

"And your orator further shows that the said
Bernard Seligman, as such chairman, and under color
of his assumed power and authority in that behalf, sub-
scribed each and every one of said instruments, to wit,
the said fifty so-called 'warrants,' and the coupons
thereto attached, and caused the same to be attested by
the probate clerk and ex officio clerk of the board of
county commissioners aforesaid, and caused the seal of
the said board to be impressed on each of the said
principal obligations or so-called 'warrants;' and there-
after, on the sixth day of August, A. D. 1886, delivered
all and singular the said fifty so-called 'warrants,' with
the said attached coupons, to Luther M. Meily, as agent
of the Southern Trust Company, a foreign corporation,
upon the declaration and promise of the said Meily, as
such agent, that the said Southern Trust Company, upon
receipt of the said instruments, would place to the credit
of the said Bernard Seligman, as such chairman, the
sum of forty-two thousand and five hundred dollars, and
interest at eight per cent per annum from July 1, 1886,
to date of payment, for the said so-called 'warrants,'
and that the said sum should be deposited with the
First National Bank of New York.

"And your orator further shows upon his informa-
tion and belief, that the said Luther M. Meily and the
said the Southern Trust Company were employed by
the said Bernard Seligman as his agents or instrumen-
talities in negotiating and disposing of the said so-
called 'warrants' and coupons; that the same were not,
nor was any part thereof, contracted for, sold, issued,

delivered, or disposed of until some time (to your orator unknown) in the month of August, A. D. 1886, although your orator believes that such time was the 15th day of August, A. D. 1886; that on the said 15th day of August, A. D. 1886, the said the Southern Trust Company, having received the said instruments from the said Bernard Seligman, through the instrumentality of the said Luther M. Meily, delivered the same to some person or persons, to your orator unknown, in consideration of some purchase price, to your orator unknown, paid to the said the Southern Trust Company in that behalf, or to some other person or persons, corporation or corporations, to your orator unknown, but which purchase price, your orator believes, exceeded ninety per cent of the face of the so-called 'warrants;' that, whatever may have been the real price so paid by the purchaser of the said instruments, the said Bernard Seligman pretends that the said purchase price was only the sum of forty-two thousand, nine hundred and eighty-eight dollars and eighty-eight cents, being eighty-five per cent of the face value of the said so-called 'warrants,' with interest at eight per cent per annum on the said face value, from July 1, A. D. 1886, the date of the said so-called 'warrants,' to August 15, A. D. 1886, the time when, as your orator believes, the said purchase money was paid as aforesaid; that the said the Southern Trust Company, or some other person or persons, corporation or corporations, to your orator unknown, held the said sum of forty-two thousand, nine hundred and eighty-eight dollars and eighty-eight cents, proceeds, or part of the proceeds, of the negotiation of the said instruments, to the credit of the said Bernard Seligman, as chairman of the said board of county commissioners, from the 15th day of August, A. D. 1886, until the 23d day of August, A. D. 1886, on which last mentioned day the said the Southern Trust Company, by L. M. Schwan, its secretary and treasurer, deposited the said

sum of forty-two thousand, nine hundred and eighty-eight dollars and eighty-eight cents with J. &. W. Seligman & Company, bankers, of the city of New York, to the credit of Bernard Seligman, chairman of the board of county commissioners; that thereafter the said Bernard Seligman, acting under color of his said assumed power and authority in that behalf, transferred the said amount of the said deposit, or a great part thereof, from the said J. & W. Seligman & Company to some depository, to your orator unknown, in the state of California; and thereafter, or at some other time, he transferred a part of the same amount to the Second National Bank of New Mexico, at Santa Fe; and at all times, ever since the said 23d day of August, A. D. 1886, the said Bernard Seligman, under the color of the said assumed power and authority held and retained, dealt with and disbursed, according to his own pleasure, the said sum of forty-two thousand, nine hundred and eighty-eight dollars and eighty-eight cents, as chairman aforesaid, without any further or other power or authority from any source derived or in him vested, and utterly refused and neglected to pay the said sum of money, or any part whatever thereof, to the treasurer of the said county, or into the treasury thereof.

"And your orator further shows that the said board of county commissioners and the said probate judge, or either thereof, had no authority to issue or negotiate negotiable paper of the said county, or to bind the said county by negotiable instruments of any character or in any form not authorized by statute; that the so-called 'warrants' specified, described, and intended in and by the said resolution were not negotiable instruments, nor were they even, as so specified, described, and intended, warrants of the nature, character, form, tenor, or purport lawfully authorized; that the said Bernard Seligman, under color of his assumed power and authority, but without the direction,

command, knowledge, or consent of the said county of Santa Fe, or of the said board of county commissioners, and without any pretense of authority except the said resolutions, contrived and executed the said instruments in the form of negotiable securities or contracts, payable to bearer, with intent to sell and dispose of the same as obligations in the nature of commercial paper; that although, by the said proceedings and resolutions, the said board of county commissioners and probate judge intended to provide for the erection of a courthouse, and every part thereof, from the first and inceptive building thereof until the full completion thereof, yet the said Bernard Seligman, under color aforesaid, so contrived and framed the said instruments as though they were designed and intended to raise funds in behalf of the said county, not for the original construction of a courthouse, but only for the completion of the erection of an incomplete courthouse, whose construction had been commenced and substantially continued before the issue or contrivance of the said instruments.

"And your orator further shows that, according to the purport and apparent tenor and effect of the said so-called 'warrants,' and the said attached interest coupons, the first of the said coupons, for the payment of six months' interest from July 1, A. D. 1886, to January 1, 1887, became, by the terms of the said coupons and of the said so-called 'warrants,' due and payable on the 1st day of January, A. D. 1887; and the second of the said coupons for the payment of six months' interest on the said principal from January 1, 1887, to July 1, 1887, became due and payable on July 1, 1887; and the said item in the said tax levy of thirteen cents on each one hundred dollars of taxable property within the said county was so levied and intended to pay the said interest accrued up to July 1, 1887, or some part thereof, and for no other purpose whatever.

"And your orator further shows that, after the said levy for territorial and county taxes so made as aforesaid by the said board of county commissioners in the month of July, A. D. 1887, a warrant for the collection of the amount of taxes so levied out of the taxable and assessed property within the said county was issued in apparent due form of law to the said defendant Francisco Chavez, sheriff of the said county, as ex officio collector of taxes therein, commanding him to collect from the several taxpayers of the said county, and out of the taxable property assessed within the said county, according to the respective assessments thereof made upon and against the said taxpayers and their property severally and respectively, including your orator, and his assessed property within the said county; and by virtue of the said warrant, and under color of the said tax levy, and of the several resolutions aforesaid of the said board of county commissioners and probate judge, the said defendant Francisco Chavez, as such collector, is now demanding from your orator and the other taxpayers of the said county payment of all and singular the said taxes, including the said item so levied, for the payment of the said interest on the said so-called 'warrants,' and he is threatening your orator and the said other taxpayers with distraint and seizure of their said taxable property, and with a sale and conveyance thereof under his authority as such collector, unless your orator and the said other taxpayers will pay to him, as such collector, the whole amount so assessed and levied against them, respectively, as taxes, including the said item so levied for payment of the said interest.

"And your orator further shows that the said item of thirteen cents on each one hundred dollars of the said taxable property within the said county is easily ascertainable by itself, and separable and distinguishable from the other items of the said tax levy.

"And your orator further shows upon his information and belief that the said defendant the board of county commissioners of the county of Santa Fe now threaten to cause to be made, executed, negotiated, issued, and sold, in open market, other like instruments or so-called 'warrants,' with attached interest coupons, in the amount of twenty-five thousand dollars principal, being the said seventy-five thousand dollars, less the said fifty thousand dollars; and this, under color of the said resolution purporting, as aforesaid, to authorize an indebtedness of seventy-five thousand dollars principal, against the said county for the erection and furnishing of a courthouse.

"And your orator further shows that the said defendant, the board of county commissioners of the county of Santa Fe, not only gives out and threatens that it will create the said additional pretended indebtedness of twenty-five thousand dollars principal, with interest at eight per cent per annum, to be paid thereon semiannually during the period of twenty years from the 1st day of July, A. D. 1886, but also, that it will, every year, for the next twenty years aforesaid, cause to be levied upon and out of the taxable property within the said county enough money to cover and pay the said interest, apparently accruing, as aforesaid, semiannually, on the said pretended indebtedness.

"And your orator further shows that according to the last assessment made in the said county for the purpose of taxation, the taxable property of your orator situate therein was assessed in an amount exceeding sixty thousand dollars, of which the sum of fifteen thousand dollars was so assessed on the tract of land and premises hereinbefore particularly described; and, according to the said tax levy so made in the year 1887, the said board of county commissioners has by means thereof created an apparent lien upon your orator's said assessed property to the amount of thirteen cents

on every one hundred dollars of the value thereof so assessed; and the said collector, by virtue of the said tax levy and the said warrant, threatens to enforce the said apparent lien as against your orator's said property unless your orator shall pay to him, not only the lawful taxes levied upon your orator's said property, which lawful taxes your orator is able, ready, and willing, and offers, to pay, but also the said item of thirteen cents on every hundred dollars aforesaid.

"And your orator further shows that the said so-called 'warrants' and coupons already issued, and the said pretended indebtedness so assumed, to be created for the erection of a courthouse, and the furnishing thereof, are fraudulent and void, and beyond the powers of the said board of county commissioners and probate judge, or either thereof, to create the same; that in fraud of the act of congress approved July 30, 1886, entitled, 'An act to prohibit the passage of local or special laws in the territories of the United States, to limit territorial indebtedness, and for other purposes,' as well as in fraud of the laws of the said territory of New Mexico, the said board of county commissioners and probate judge, by the means aforesaid, attempted to create and contract an indebtedness of the said county after the 30th day of July, A. D. 1886, although, at the time of such attempt, and before the creation and contraction of any pretended indebtedness of the said county thereunder, the indebtedness of the said county existing, outstanding, far exceeded four per centum of the value of the taxable property within such county, as ascertained by the last assessment in the said county for territorial and county taxes, previous to the said attempt, and previous to the incurring of such pretended indebtedness thereunder; and, with like intent, the said board of county commissioners and probate judge fraudulently caused the said so-called 'warrants,' to the aggregate amount

of fifty thousand dollars principal aforesaid, to be antedated so as to appear on their face to have been issued on the 1st day of July, 1886, prior to the passage of the said act of congress, and inserted, or caused to be inserted, in the said so-called 'warrants,' a recital or declaration that the same were authorized and issued for the completion of the erection of a courthouse, in order falsely and fraudulently thereby to make it appear that the said so-called 'warrants' were not authorized or issued in anticipation, for the purpose, of providing funds for the commencement and original erection of a courthouse, but for the mere completion of a courthouse already begun.

"And your orator further shows that there is not, and there never has been, in existence any special statute applicable to the said county of Santa Fe or other law of the said territory general or special, authorizing the counties of said territory or the said county of Santa Fe, or the said board of county commissioners and probate judge, or either thereof, to issue or sell or dispose of, in the open market, or by private bargain, for money loaned or advanced, or at a discount, any instruments, obligations, or contracts of the form or nature of the said so-called 'warrants' and coupons, or any other negotiable instruments whatsoever, either for the purpose of the erection of a courthouse, or for the purpose of the completion of the erection of a courthouse, or for the furnishing of a courthouse; and that the only warrants or other like obligations which, prior to the said act of congress, the said county of Santa Fe, or any official authority thereof, was authorized by law to execute or issue for any such or like purpose, were nonnegotiable instruments, merely importing on their face an order on the treasurer of the said county to pay to the payee therein named the amount of an existing indebtedness of the said county to the said payee, and the same were merely

of the nature of orders on the treasurer of the said county to pay such prior and existing indebtedness out of appropriate county funds; and such warrants, when authorized by law, have never been the lawful subject of negotiation or sale by or under the authority of the said county, and have never been and are not issuable at any discount whatever.

"And your orator further shows that, unless restrained by the process of this court, the said collector, by virtue of the said tax levy and warrant, will proceed to advertise and offer for sale the taxable real estate within the said county belonging to your orator and the other taxpayers of the said county, upon their refusal to pay the said item of thirteen cents on each one hundred dollars so levied as aforesaid, and pursuant to the provisions of the revenue law of the said territory, the said collector, after such advertisement, will proceed to sell, at public auction, the said real estate, including the aforesaid tract of land of your orator, and, in conformity with the said provisions, will execute and deliver to the purchaser or purchasers at such sale deeds of conveyance of such real estate, importing upon their face, by virtue of the said provisions, the presumption and prima facie evidence in all courts in the said territory in all controversies and suits in relation to the right of such purchasers, their heirs and assigns, to the land thereby conveyed, of the following facts, to wit: (1) That the real estate conveyed was subject to taxation for the year or years stated in the deed; (2) that the taxes were not paid at any time before the sale; (3) that the real estate conveyed had not been redeemed from the sale at the date of the deed; (4) that the property had been listed and assessed at the time and in the manner required by law; (5) that the taxes were levied according to law; (6) that the property was advertised for sale in the manner and for the time required by law; (7) that

the property was sold for taxes as stated in the deed; (8) that the grantee named in the deed was the purchaser, or the heir at law, or the assignee of the purchaser; and (9) that the sale was conducted in the manner provided by law.

"And your orator further avers that by means of the premises, and of such apprehended proceedings, sales, and conveyances on the part of said collector, a cloud will be created on the title of your orator's said tract of land, as well as on the title of other taxable real estate in the said county.

"And your orator further shows that there is no adequate remedy at law in the premises; that, unless this court will interpose therein by virtue of its equitable jurisdiction, a multiplicity of suits will arise, as your orator is advised, between your orator and the said other taxpayers and the said collector and the said board of county commissioners, and great expense and unnecessary annoyance and litigation will ensue, not only to your orator and other taxpayers concerned, but also to the said county, and to the officers engaged in the administration of its financial affairs; whereas, if this honorable court, the premises considered, shall declare the invalidity of the said tax levy and warrant, and of the said resolutions, and other proceedings antecedent thereto, so far as respects the said pretended indebtedness and the said unlawful item of the said tax levy, and shall eliminate the said unlawful item from the said tax levy and the said warrants, and shall prevent the inclusion by the said board of county commissioners in its future levy of taxes in the said county of all items intended for the payment of the said pretended indebtedness, or of any interest accrued or to accrue thereon, the collection of taxes in the said county will be relieved of the embarrassment and fraud herein complained of, and of the delay and litigation occasioned thereby, and the remainder and lawful part of

the said taxes will be more readily paid to the public convenience. In tender consideration of the premises, and inasmuch as your orator is without remedy therein at and by the strict rules of the common law, he refers all these matters and grounds of complaint to your honor's court in chancery, wherein the same are properly cognizable and relievable, and prays that the said board of county commissioners of the county of Santa Fe, Francisco Chavez, sheriff and ex officio collector of the said county, and Nicolas Garcia, treasurer of the said county, be made defendants to this bill of complaint, with the proper process to bring them before the court; that they be required to answer all and singular the charges, allegations, and statements of this bill without oath, an answer under oath being hereby expressly waived; that, by the decree of the said court herein to be pronounced, it may be declared and decreed that the said fifty instruments or obligations, or so-called 'warrants,' and all coupons, or so-called 'interest warrants,' at any time thereto attached, and the pretended indebtedness of the said county thereby evidenced, and all the resolutions and proceedings of the said the board of county commissioners of the county of Santa Fe, and the said probate judge of the said county, or either thereof, purporting to create or authorize the said indebtedness, or any other indebtedness for the erection of a courthouse in the said county, or for the furnishing thereof, are all and singular fraudulent, void, and of no effect, as against the said county or the taxpayers thereof, or the taxable property within the said county; that the said tax levy so made in the year 1886 is void as to the said item contained therein of thirteen cents for each one hundred dollars of said assessed property, purporting to be levied for the payment of interest, evidenced by the said so-called 'warrants' and 'coupons;' that the said warrants, and all proceedings by the said collector for the enforce-

ment and collection thereof, are void in respect of so
much thereof as relates to the said item of tax; that
the said tax of thirteen cents on every hundred dollars
aforesaid is fraudulent and void, and a cloud on the
taxable real estate within the said county, and specially
is a cloud on the title of your orator's above described
tract of land, and, further, that, by the said decree,
the said board of county commissioners may be per-
petually restrained and enjoined from making, issuing,
delivering negotiating, selling or disposing of any
further obligations, instruments, contracts, warrants,
bonds, or other evidence of debt in the sum of twenty-
five thousand dollars, or in any sum whatever, whereby
the said county may be, or may be made to appear to
be, chargeable or responsible for the payment of any
sum of money for the erection of a courthouse, or for
the completion of the erection of a courthouse, or for
the furnishing of a courthouse, under the assumed
authority or by virtue of any resolution or proceedings
hereinbefore mentioned or referred to, or by reason of
any resolution or other proceedings whatever which
may be taken, approved, adopted, or sanctioned by the
said board of county commissioners or probate judge,
or either thereof, at any time now or hereafter, when
or while the lawful existing indebtedness of the said
county does or shall exceed four per centum on the
value of the taxable property within such county, as
ascertained by the last assessment for territorial or
county taxes next previous to any action, past or future,
in the premises, by the said county authorities, or any
thereof; and, further, that the said defendant Nicolas
Garcia, as treasurer of the said county, may be perpet-
ually restrained and enjoined in like manner from
paying out of any funds in his hands as such treasurer
the said so-called 'warrants' and 'coupons,' or any part
thereof, or any other like instruments or evidences of
debt; and, further, that the said defendant Francisco

Chavez, collector of the said county, may be perpetually restrained and enjoined in like manner from enforcing or collecting as against the taxpayers of the said county, and the taxable property therein situate, and especially against your orator and his property, so much of the said tax levy as relates to and attempts to impose the said fraudulent and unlawful item, to wit, the said thirteen cents on every one hundred dollars of the assessed value of his said property; and, further, that your orator and such taxpayers as may come into this suit, and contribute to the expense thereof, may have, not only the relief above prayed, but such further and other relief as may be just and equitable in the premises, together with their costs in this behalf; and also that, pending this suit, the said defendants, and each of them, may, by writ of injunction to be issued herein, under the seal of the said court be restrained and enjoined in the several respects wherein a perpetual injunction is hereinbefore prayed. May it please your honor to grant unto your orator the writ of subpoena to be directed to the board of county commissioners of the county of Santa Fe, Francisco Chavez, sheriff and ex officio collector of the county of Santa Fe, and Nicolas Garcia, treasurer of the county of Santa Fe, thereby commanding them, and every one of them, at a certain day, and under a certain penalty, therein to be specified, personally to be and appear before your honor in this honorable court; and then and there to answer all and singular the premises aforesaid, and to stand to perform and abide such order, direction, and decree therein as to your honor shall seem meet; and your orator will ever pray," etc.

On the ninth day of November, 1887, the defendants in error appeared and filed a demurer to the bill, as follows: "The demurrer of the board of county commissioners of Santa Fe county, Francisco Chavez, sheriff of Santa Fe county, and Nicolas Garcia, treas-

urer of Santa Fe county, defendants, to the bill of complaint of Thomas B. Catron, complainant. These defendants, by protestation, not confessing or acknowledging all or any of the matters and things in the said complainant's bill contained to be true in such manner and form as the same are therein set forth, do demur thereto, and for cause of demurrer show that the said complainant has not in and by his said bill stated or shown such a case as does or ought to entitle him to any such discovery or relief as is thereby sought or prayed for against or from the said defendants, or either of them. And for special cause of demurrer the defendants further say and show (1) that said complainant has a complete and adequate remedy at law; (2) that said bill does not disclose that said complainant has paid or tendered the taxes admitted by said bill to be due from said complainant to said county; (3) that said bill does not disclose any facts upon which it appears that said complainant will be irreparably injured, or that his title will be clouded, or that his remedy at law is not complete and adequate, or that the said bill and suit will prevent a multiplicity of suits; (4) that the complainant has not by his said bill shown such a case as entitles him to such relief as is thereby prayed, inasmuch as it does not thereby appear that there is or would be any impediment to an action at law being brought by the said complainant to ascertain the right relative to the said tax in the said bill particulary mentioned, or that any trial or action, verdict or judgment, has been hitherto obtained by the said complainant for that purpose, or that there were previously to, or at the time the said bill was filed, or now is, any authentic record of such right; (5) that the said bill does not show that complainant has pursued such remedy in this behalf as he had before the board of county commissioners of the county of Santa Fe, or by appeal from said commissioners. Whereof, and for

divers other errors and imperfections in said bill contained, these defendants demand the judgment of this court whether they shall be compelled to make any further or other answer to the the said bill, or any of the matters and things therein contained, and pray to be hence dismissed, with their reasonable costs in this behalf sustained.'' On the twelfth day of the same month a hearing was had upon the demurrer, and it was sustained. The complainant refusing to amend, and failing to proceed further in the cause, the bill was dismissed. Thereupon complainant sued out a writ of error, and the cause was removed into this court.

There are many interesting and important questions presented in this record, and they have been ably and exhaustively discussed by the solicitors upon each side in their oral arguments and in their briefs; but we do not deem it necessary, at this time, to consider them in detail or at length. The demurrer is general, and goes to the whole bill, and the various grounds assigned amount to no more than the general statement that the bill contains no equity. The effect of the ruling below in sustaining the demurrer is that there is no equity in the bill. We are satisfied, however, from an examination of the opinion of the learned district judge, which is before us, that this aspect of the case was not pressed upon him, nor considered by him in arriving at his conclusion. If the bill contains any equity, a demurrer to the whole bill upon that ground is too broad, and should be overruled. Story, Eq. Pl., sec. 443. The bill charges that the board of county commissioners, by and through their chairman, issued and sold fifty warrants, with interest coupons attached, after the act of congress of July 30, 1886, had been passed, and antedated them, so that they should appear to have been issued upon the first day of July, 1886, and that at the time of the actual issue the county of

Santa Fe was indebted in an amount exceeding four per cent of the value of the taxable property of the county. This, if true (and it is admitted by the demurrer) was a clear evasion of the act of congress, and a fraud upon the law. Fraud is recognized as one of the grounds upon which a court of equity will interfere to prevent a wrong, although there may be some legal remedy provided. Hannewinkle v. Georgetown, 15 Wall. 548. The bill further charges that the board of commissioners threaten and give out that they will issue and negotiate the remaining $25,000 of warrants. If, at the time of the first issue of warrants, and at the time the bill was filed, the county was indebted in an amount equal to or exceeding the limit fixed in the act of congress, and if the board of commissioners was about to create a further indebtedness by the issue and sale of the remaining warrants authorized by the resolution of July 20, 1886, then clearly such contemplated action would be illegal, and a fraud upon complainant as a resident taxpayer of the county, and he could, by injunction, prevent its accomplishment. Crampton v. Zabriskie, 101 U. S. 601. Before such action was held and the warrants issued, there would be no adequate legal remedy open to him. The judgment must be reversed, and the cause remanded.

LONG, C. J., and HENDERSON, J., concur.