101 U.S. 601
 101 U.S. 601
 25 L.Ed. 1070
 CRAMPTON
v.
ZABRISKIE.
 October Term, 1879
 
 APPEAL from the Circuit Court of the United States for the District of New Jersey.
 'The Board of Chosen Freeholders of the County of Hudson,' in the State of New Jersey, adopted, Dec. 14, 1876, a resolution for the purchase of certain lots in Jersey City, on which to erect a court-house and offices for the county, at the price of $2,000 for each twenty-five hundred square feet. In payment therefor the county was to issue to the owner of them bonds 'payable out of the amount appropriated and limited for the expense of the next fiscal year; said bonds to run one year from the date thereof, and bearing interest at the rate of seven per cent per annum.'
 Crampton, the owner, in accordance with the terms of the resolution, accepted the proposition of purchase, and delivered, Dec. 22, 1876, to the board a duly executed deed for the lots, bearing date the 18th of that month. The board accepted it, caused it to be duly recorded in the register's office of the county, and delivered to Crampton three several bonds for the purchase-money, amounting to $225,720.
 One of the bonds is as follows:——
 '$75,000.
 'STATE OF NEW JERSEY, COUNTY OF HUDSON.
 'No. 1.
 'TEMPORARY LOAN BOARD.
 'Know all men by these presents, that the Board of Chosen Freeholders of the county of Hudson acknowledge themselves indebted. for value received, to Mahlon B. Crampton, in the sum of seventy-five thousand dollars, lawful money of the United States of America, to be paid to the said Mahlon B. Crampton, at the county collector's office in the county of Hudson, on the eighteenth day of December, one thousand eight hundred and seventy-seven, with interest thereon from the date of these presents, at the rate of seven per cent per annum, payable annually.
 'This bond being executed and issued in pursuance of a resolution of the said board passed the fourteenth day of December, A.D. 1876, and approved by the director at large Dec. 16, 1876, authorizing the county collector to issue the same for the use of the county in payment for land purchased by said board in pursuance of said resolution.
 'In witness whereof, the Board of Chosen Freeholders of the County of Hudson have hereunto affixed their corporate seal and caused these presents to be signed by their director at large this twenty-second day of December, eighteen hundred and seventy-six.
 [L. S.] 'E. W. KINGSLAND,
 'County Collector of the County of Hudson.
 'D. C. HALSTED, at large,
 'Director of the Board of Chosen Freeholders of the County of Hudson.
 (On the margin:) 'Board of Chosen Freeholders Hudson County.'
 The other bonds are of the same purport, except that one of them is for $75,720. Crampton assigned the latter to one Harrison, who, in consideration thereof, released the lots from a mortgage in his favor to which they were subject.
 Crampton, March 13, 1878, brought suit against the board on the other bonds in the court below. Zabriskie and two other resident tax-payers of the county thereupon filed their bill of complaint on the equity side of that court, praying that the bonds be declared void and be delivered up, that the board be ordered to reconvey the property to Crampton, and that he be enjoined from prosecuting an action on or parting with the bonds in any other way than by surrendering them to the board. The bill alleges that Siedler and other tax-payers of the county applied to the Supreme Court of the State by writ of certiorari for relief against said resolution and purchase, and that the court, by its final judgment rendered Nov. 22, 1877, declared that said resolution was illegal and void. It further alleges that the lots should have been then conveyed to Crampton and the bonds surrendered to the board, 'but that nothing had been done by either in the matter.'
 Crampton sets up that the transaction between him and the board was in all respects lawful, that he was not a party to the proceedings before the Supreme Court, that it was not his duty to surrender the bonds, and that if the latter are void, the defence is available at law.
 The court below, Oct. 1, 1879, rendered a decree in accordance with the prayer of the bill, and also restrained Crampton from suing for the value of the lots. He thereupon appealed.
 The boards of chosen freeholders are created by the act of April 16, 1846, bodies corporate and politic, and invested with certain powers, among which is that of purchasing, receiving, and holding lands in trust to and for the use of the respective counties.
 Under the fourth section, it is the duty of the board at its stated annual meeting, or at any other eeting held for the purpose, to vote, grant, and raise such sums of money as it deems necessary and proper for the building of jails and court-houses, and doing, fulfilling, and executing all the legal purposes, objects, and business of the county; and, after it has passed an order or grant for the raising of any sum of money, it is required by the twelfth section to direct, in writing, the assessors of the several townships to assess the said sum or sums on the inhabitants and their estates, agreeably to the law for the time being, for the raising of money by taxation for the use of the State.
 Whenever the needs of the county require it, the thirteenth section authorizes the board to assess and collect money by taxation, for the use of the county, at a different time from the assessment for the State tax.
 An act approved Feb. 26, 1874, designates the 1st of December as the commencement of the fiscal year of the board for the county of Hudson; and its fifth section provides 'that the expenditures of the board of chosen freeholders in any fiscal year shall not exceed the amount raised by tax for said year, unless by the spread of an epidemic or contagious disease a greater expenditure shall be required for the protection of the public health, and the board may fix the amount to be raised by tax for county purposes at any meeting of said board held prior to July (15th) fifteenth in any year.'
 The following act of the legislature was approved Feb. 7, 1876:——
 'A Supplement to an act entitled 'An Act for the punishment of crimes,' approved March twenty-seventh, eighteen hundred and seventy-four.
 '1. Be it enacted by the Senate and General Assembly of the State of New Jersey, that if any board of chosen freeholders, or any township committee, or any board of aldermen or common councilmen, or any board of education, or any board of commissioners of any county, township, city, town, or borough in this State, or any committee or member of any such board or commission, shall disburse, order or vote for the disbursement of public moneys, in excess of the appropriation respectively, to any such board or committee, or shall incur obligations in excess of the appropriation and limit of expenditure provided by law for the purposes respectively of any such board or committee, the members thereof, and each member thereof, thus disbursing, ordering or voting for the disbursement and expenditure of public moneys, or thus incurring obligations in excess of the amount appropriated and limit of expenditure as now or hereafter appropriated and limited by law, shall be severally deemed guilty of malfeasance in office, and on being thereof convicted shall be punished by fine not exceeding one thousand dollars or imprisonment at hard labor for any term not exceeding three years, or both, at the discretion of the court.
 '2. And be it enacted, that this act shall take effect immediately.'
 The members of the Board of Chosen Freeholders are elected at the spring charter and township elections, and hold their offices for one year commencing in May and until their successors are chosen and legally qualified.
 It does not appear that the board at any meeting prior to July 15, 1877, included in the amount to be raised by taxation the purchase-money for the lots in question.
 Mr. Frederick T. Frelinghuysen and Mr. Joseph D. Bedle for the appellant.
 The bonds are valid; and if they are not, Crampton should not have been enjoined from prosecuting an action for the recovery of the purchase-money for the lots.
 He was not a party to the proceedings on certiorari, and is therefore not bound by the judgment rendered in them. The Supreme Court of New Jersey expressly held that its decision was 'not upon the validity of his claim.' He may, therefore, insist upon it here, notwithstanding that court was of opinion that the resolution was in violation of statutes that are merely directory, but which the board could not plead in avoidance of his rights under an exec ted contract. An order setting aside the resolution after it had been carried into effect cannot cancel the obligation of the bonds, or impair the title which passed by his conveyance.
 It must be conceded that by the original act creating the county of Hudson, its board of freeholders had all the rights, power, and authority vested in any other board, and that no limitation other than the public needs, of which it was the exclusive judge, was imposed upon its power to purchase land whereon to erect buildings for the use of the courts and public officers, or for any other authorized purpose.
 The only objection made below to the bonds is grounded upon the assumption that the statutes of 1874 and 1876 prohibit a contract by which the board gains a credit beyond the fiscal year in which such a purchase is made.
 The act of 1874 only requires that the expenditures of the fiscal year shall not exceed the amount raised by taxation for that year. It will not be questioned that under its general powers the board had the right to purchase land and erect a court-house thereon. The current of authority is that a municipal corporation may borrow money for any appropriate purpose within the scope of its charter. Bank v. Chillicothe, 7 Ohio, Part II. 31; State v. Madison, 7 Wis. 688; Clark v. Janesville, 10 id. 136; Mills v. Gleason, 11 id. 470. The properly constituted authorities of a municipality may bind the corporation whenever they have power to act in the premises. Cincinnati City v. Morgan, 3 Wall. 275. Authority to build a court-house carries with it the right to borrow money to build it, Lynde v. The County (16 id. 6); and bonds or notes may be given for any authorized work or purchase. The Mayor v. Ray, 19 id. 468. But although there may be some conflict in the decisions as to the power of a municipality to borrow money, there is none as to its power to contract for work or property on credit. There is a wide and manifest difference between incurring a debt in the prosecution of a purpose expressly sanctioned by statute and borrowing money with a view to such prosecution.
 The learned district judge who decided this case below says, 'The contract for the purchase was consummated on the 22d of December, 1876, and if the board at any regular meeting, or special meeting, called for the purpose prior to the 15th of July following, had included the consideration money to be paid in the amount to be raised by tax for the fiscal year, it is difficult to perceive any illegality in the transaction.'
 The board had, in his opinion, the right to give the bonds in question. The illegality then consists in the alleged failure to provide in the proper fiscal year the money to pay them. Crampton is in no wise responsible for that failure, and neither the board nor the tax-payers can set up its wrong to bar his claim for the stipulated price of the property. His reasoning substantially amounts to this,—the bonds were valid when given; but inasmuch as the board neglected to levy a tax to pay them at maturity, the defence of ultra vires must be sustained.
 It does not, however, appear that when the bonds were due there was not money enough in the treasury to pay them. There is no evidence whatever in the record of the amount raised or then unexpended, and the burden of proof of any fact in discharge of the liability rests upon the board and not upon Crampton.
 The act of 1876 must receive a strict construction. The object was not to impair obligations incurred, but to reach offending individual members of the board. Its terms do not justify the assumption that it was the legislative intent to render absolutely void a contract in contravention of them. It contemplates certain things accomplished,—the disbursement as a fact, and the obligation incurred as an existing liability. Its policy was not to punish a third party who contracts with the board, and delivers to it his property.
 But if the bonds are void, they are mere evidences of debt, and can be severed from the consideration of the debt. The right of recovery on the consideration still subsists and may be enforced. Hitchcock v. Galveston, 96 U. S. 341.
 Mr. J. H. Lippincott and Mr. Peter Bentley for the appellees.
 MR. JUSTICE FIELD delivered the opinion of the court.
 
 
 1
 On the 14th of December, 1876, the Board of Chosen Freeholders of the County of Hudson, in New Jersey, passed a resolution to purchase of the defendant, Crampton, certain real property in Jersey City, upon which to erect a court-house and other buildings for the county, at the price of $2,000 for every 2,500 square feet, the price at which he had previously offered to sell the same, and to issue to him in payment thereof bonds of the county, payable out of the amount appropriated and limited for the expenses of the next fiscal year, the bonds to run for one year and to draw interest at the rate of seven per cent per annum. The bonds were to be signed by the director at large and the collector of the county, and to be issued under its seal. On the 18th of December, Crampton executed and delivered to the board a conveyance of the property, which was accepted and recorded in the office of the register of deeds; and thereupon three bonds were executed and delivered to him, two of which were for the sum of $75,000, and one was for $75,720. No provision was made by the board for the payment of the bonds beyond the general declaration that they should be paid out of the amount appropriated and limited for the next fiscal year. By the law then in force the fiscal year commenced on the first day of December of each year, and the expenditures of the board were restricted to the amount raised by tax for that year, unless by the spread of an epidemic or a contagious disease a greater expenditure should be required; and the amount to be raised was to be determined at a meeting of the board to be held prior to July 15 of each year. Some of the resident tax-payers were dissatisfied with this issue of bonds without making definite provision for their payment by taxation, and accordingly obtained from the Supreme Court of the State a writ of certiorari to review the proceedings of the board. The court adjudged the proceedings invalid, and set the same aside.
 
 
 2
 It does not appear that any attention was paid either by the board or Crampton to this judgment. The board did not reconvey or offer to reconvey the land to Crampton; nor did the latter return or offer to return to the board the bonds received by him. But, on the contrary, Crampton commenced an action in the Circuit Court of the United States to enforce their payment. The present suit, therefore, is brought by other tax-payers of the county to compel the board to reconvey the land and Crampton to return the bonds, and to enjoin the prosecution of the action to enforce their payment.
 
 
 3
 The facts here stated are not contradicted; they are substantially admitted; and upon them the court below very properly rendered a decree for the complainants. Indeed, upon the simple statement of the case, it would seem that there ought to be no question as to the invalidity of the proceedings of the board. The object of the statute of New Jersey defining and limiting its powers would be defeated if a debt could be contracted without present provision for its payment in advance of a tax levy, upon a simple declaration that out of the amount to be raised in a future fiscal year it should be paid. The law, in terms, limits the expenditures of the board, with a single exception, to the amount to be raised by taxation actually levied, not by promised taxation in the future. And, as if this limitation was not sufficient, it makes it a misdemeanor in any member of the board to incur obligations in excess of the amount thus provided. It would be difficult to express in a more emphatic way the will of the legislature that the board should not incur for the county any obligations beyond its income previously provided by axation; in other words, that the expenses of the county should be based upon and never exceed moneys in its treasury, or taxes already levied and payable there.
 
 
 4
 Of the right of resident tax-payers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county or the illegal creation of a debt which they in common with other property-holders of the county may otherwise be compelled to pay, there is at this day no serious question. The right has been recognized by the State courts in numerous cases; and from the nature of the powers exercised by municipal corporations, the great danger of their abuse and the necessity of prompt action to prevent irremediable injuries, it would seem eminently proper for courts of equity to interfere upon the application of the tax-payers of a county to prevent the consummation of a wrong, when the officers of those corporations assume, in excess of their powers, to create burdens upon property-holders. Certainly, in the absence of legislation restricting the right to interfere in such cases to public officers of the State or county, there would seem to be no substantial reason why a bill by or on behalf of individual tax-payers should not be entertained to prevent the misuse of corporate powers. The courts may be safely trusted to prevent the abuse of their process in such cases. Those who desire to consult the leading authorities on this subject will find them stated or referred to in Mr. Dillon's excellent treatise on the Law of Municipal Corporations.
 
 
 5
 Decree affirmed.