[No. 1395.]

THE STATE OF NEVADA, EX REL. WILLIAM HAYES, RELATOR, *v.* W. C. GALLAGHER, ABE TRAVIS AND L. S. SCOTT, COUNTY COMMISSIONERS OF WHITE PINE COUNTY, STATE OF NEVADA, RESPONDENTS.

1—RECORD ON CERTIORARI CONCERNING ACTION OF BOARDS OF COUNTY COMMISSIONERS.—On *certiorari* against a board of county commissioners a motion by respondent to file and make a part of the record papers not embraced in the record or proceedings of the Board, should be denied.

2—RIGHT OF TAXPAYER TO OPPOSE CLAIM.—Any resident taxpayer has the right to oppose, in a proper manner, the allowance of a claim against a county, both before the board of commissioners and in the courts. (Stats. 1893, 121.)

3—JURISDICTION TO ALLOW CLAIMS AGAINST COUNTY.—Under Stats. 1893, 121, providing that any taxpayer may file with the board written objections to the allowance of a claim against the county; and that the board shall thereupon table such claim for at least ten days, after which they may consider the claim unless proceedings have been instituted in court to determine its validity, such board has no jurisdiction to act thereon after such objections have been filed and proceedings instituted in court to determine its validity and they have been notified thereof.

ORIGINAL PROCEEDING on application for writ of *certiorari*.

The facts appear in the opinion.

*Thomas Wren* and *F. X. Murphy*, for Relator:

The relator asks that the order of the board directing the county auditor to issue a certificate to Davis be annulled and set aside upon the following grounds:

1. That the orders calling for special meetings did not sufficiently specify the business to be transacted.

2. That the protest of relator against the allowance of the petition and claim of Davis divested the board of jurisdiction to act for not less than ten days, and the commencement of the action to determine the validity of the claim divested the board of jurisdiction to act until the validity of the claim and petition were settled in court.

3. That the board failed to order each item, date and value

comprising the petition and claim of Davis with reference to the law by title.

4. The act of the legislature directing the board to order the issuance of the certificate to Davis is unconstitutional. (Stats. 1893, p. 23.)

Upon the return to this writ the court only inquires whether the board has exceeded its jurisdiction or not. (*Maynard* v. *Bailey*, 2 Nev. 313.)

A board of county commissioners is a body possessing limited and special powers. When the authority of a board is questioned the record must affirmatively show all the facts necessary to give it authority to perform the act, and when this is not shown by the record the presumption is against its jurisdiction. (*Godchaux* v. *Carpenter*, 19 Nev. 415; *Swift* v. *Co. Comrs.*, 6 Nev. 97; *State* v. *Co. Comrs.*, 12 Nev. 19.)

An order calling a special meeting must "specify the business to be performed" at the meeting, and no other business can be transacted. (Gen. Stats., sec. 1945.)

At the special meeting on the 4th the Davis claim came on to be heard, and relator duly protested against it and it was laid on the table until the 16th. On the 14th day of December relator commenced action against Davis and the board to determine the validity; and thereafter and prior to the special meeting on the 16th Davis and the commissioners were served with summons in said action, and at the meeting on the 16th the board was again notified that such action had been commenced.

The commencement of the action deprived the board of jurisdiction of the claim and invested it in the courts. All orders made after suit commenced were invalid. (Stats. 1893, p. 121.)

The act for the relief of Davis is unconstitutional, and all orders of the board in pursuance of it are invalid. (*State* v. *Co. Comrs.*, 7 Nev. 83; *Williams* v. *Bidleman*, 7 Nev. 68; Stats. 1893, p. 23.)

Any citizen and taxpayer may contest an allowance. (Gen. Stats., sec. 1962.)

The claim is barred by the statute. (Gen. Stats., sec. 1965.)

*Rives & Judge*, for Respondents:

This transaction is not "county business" in the sense

that that term is used in the constitution. Neither section
1950, Gen. Stats., nor the amendment contained on p. 121,
Stats. 1893, were intended to apply to anything but "claims"
or "demands" against a county, such as creditors' bills,
officers' and employes' and contractors' accounts, charges
and bills; and the legislature did not intend that the provis-
ions of either should apply to such transaction as the one
involved here.   It especially never intended that the latter
part of the amendment of 1893, *supra*, should apply in such
an instance as the latter so as to suspend the powers of the
board and thus in some instances work irreparable injury.
As to definition of "claim," see 5 Nev. 15.

The law involved is admitted to be "local," still it affects
all citizens or people and classes (if any classes there be)
interested not only "generally," but equally and justly.

It is also admitted that this law is "special," but both
"local" and "special" have been frequently upheld in this
State.   (*Berling* v. *Goodman*, 1 Nev. 314; *Ash* v. *Parkinson*, 5
Nev. 15; *State, ex rel. Clarke*, v. *Irwin*, 5 Nev. 111; *Hooten* v.
*McKinney*, 5 Nev. 194; *Hess* v. *Pegg*, 7 Nev. 23; *Evans* v. *Job*,
8 Nev. 322; *Young* v. *Hall*, 9 Nev. 212; *Ex parte Spinner*, 10
Nev. 323; *State* v. *Fogus*, 19 Nev. 247.)

"It is no argument against the 'local special' law that a
general one might be found to cover it."   This is expressly
decided in 8 Nev. 322, *et seq.*, and in 7 Nev. 23, 5 Nev. 122.

Statutes will not be declared unconstitutional unless
clearly so.   (8 Cranch, 87, 128, 188; 30 Iowa, 9; 62 Penn. 81,
286; 3 Denio, 87, 394; 7 N. Y. 109; 20 Wend. 382; 19 Barb.
81, 84, 88.)

By the Court, MURPHY, C. J.:

This is an original proceeding on *certiorari* in this court.
The affidavit sets forth, among other things: That the
relator was, and has been for more than ten years, a resident
and taxpayer within the county of White Pine.   That since
the first Monday of January, 1893, the respondents were, and
are, the duly elected, qualified and acting board of county
commissioners in and for the county of White Pine.   That
on or about the 13th day of May, 1875, the then board of
county commissioners allowed a claim of one M. W. Henry
for the sum of $3,421 35.   That on the same day the county

auditor audited said claim, and issued a certificate of indebtedness against said county for the amount, and delivered the said certificate to M. W. Henry. That on or about the 7th day of November, 1883, the relator, for a valuable consideration, became the owner and holder of said certificate of indebtedness, and is now the legal owner thereof. That the relator has been informed and believes that the said certificate has been lost or destroyed. That on the 4th day of December, 1893, one W. L. Davis filed a claim and demand with the board of county commissioners, claiming to be the owner of said certificate of indebtedness, and alleging that said certificate had been lost, and demanding that the board of county commissioners make an order authorizing, commanding and directing the auditor of said county to issue to the said Davis a certificate of indebtedness in lieu of the one alleged to have been lost or destroyed. That the relator appeared before the board, and objected to the issuance of the certificate to the said W. L. Davis, which objections were reduced to writing, and filed with the proceedings of the board; and the board of county commissioners adjourned its said meeting from the 4th until the 16th day of December, 1893.

On the 14th day of December, 1893, the relator commenced an action in the district court of the State of Nevada, in and for the county of White Pine, against the said W. L. Davis and the board of county commissioners, to determine the validity and ownership of said certificate of indebtedness. That on the 16th day of December, 1893, the board met in special session, and notwithstanding the filing of the objections to the making of any order by the board, and the commencement of the said action in the district court, the said board made and had entered an order on its proceedings authorizing and directing the county auditor to issue a new certificate of indebtedness to W. L. Davis in lieu of the one alleged to have been lost or destroyed, and the said certificate has been issued to the said W. L. Davis by the said county auditor. The relator contends that the board of county commissioners had no jurisdiction to make the order entered upon its minutes on the 16th day of December, 1893.

The record of the proceedings of the board of county commissioners sent up to this court by way of return to the writ

substantiates the above facts, except as to the ownership of the certificate of indebtedness; but on the argument of the case the counsel for respondents asked permission to file a paper, and make it a part of the record in the case, which he claims is an agreement entered into by and between the relator and W. L. Davis, in which he claims it is shown that the relator hypothecated to Davis the certificate of indebtedness as security for the payment of money. The affidavit and agreement were not presented to, nor made a part of the proceedings of, the board; and this court cannot receive and examine papers in a proceeding of this nature, which are neither a part of the record nor of the proceedings of the board. The request to file the papers and make them a part of the record must be denied.

On the 16th day of November, 1893, two of the members of the board of county commissioners met in the clerk's office, and signed an order calling a special meeting of the board to meet on the 4th day of December, 1893. The notice was served on the absent members, and a copy thereof published in the White Pine News, a newspaper printed and published at the county seat of White Pine county. On the 4th day of December, 1893, the board met at the office of its clerk, all members being present. W. L. Davis, in person and by his attorney, was present, and filed a petition asking that a certificate of indebtedness against White Pine county for the sum of $3,421 35 be issued to him, the said Davis, in lieu of the one that had been lost or destroyed. The relator, William Hayes, in person and by attorney, was also there, and objected to the board making any order or considering said petition, and asked the board to lay the claim or demand of W. L. Davis on the table for ten days or more, to give the relator an opportunity to institute proceedings in a court of competent jurisdiction to determine the validity of such claim or demand of the said Davis. The board did adjourn until the 16th day of December, 1893. Such adjournment appears to have been taken under the provisions of an act of the legislature of 1893 (Stats. 1893, p. 121) amending sections 16 and 22 of the act of March 8, 1865, " creating a board of county commissioners in the several counties of this state and defining their duties."

Stats. 1865, p. 257, sec. 22, as amended, reads as follows:

"Any person being a resident and taxpayer of the county may appear before and file with the board of county commissioners of the county wherein he resides written objections to the allowance of any claim or claims, demand or demands against the county. Such objection in writing shall properly describe the claims or demands objected to, and the board of county commissioners shall file the same and embody such objections in the record of their proceedings, and lay such claims or demands on the table for a definite period of time, not less than ten days, at the expiration of which time they may proceed to consider the claims or demands so objected to, together with the objections, unless proceedings have been instituted in a court of competent jurisdiction to determine the validity of such claims or demands."

On the 14th day of December, 1893, the relator, William Hayes, did commence an action in the district court in White Pine county, by the filing of a complaint and the issuance of a summons thereon, against the said W. L. Davis, and each member of the board was made a party defendant; and the said summons was served on the said Davis and each member of the board on the 15th day of December, 1893. On the 16th day of December, 1893, the board of commissioners met pursuant to the order of adjournment made on the 4th; and notwithstanding the filing of the objections, and the commencement of the action in court, by the relator, the board of commissioners proceeded to consider and allow, and did order, the auditor of White Pine county to draw his warrant against the general fund in the county treasury for the sum of $3,421 35, in favor of W. L. Davis.

Under the statute referred to, it was their bounden duty to have stayed further action until the question of ownership of the certificate of indebtedness should have been determined by the district court. Although the constitution has provided that the "legislature shall provide by law for the election of a board of county commissioners in each county," it also provides that such commissioners shall jointly and individually perform such duties as may be prescribed by law. It is a tribunal with limited jurisdiction, and possessed only of *quasi* judicial powers, and cannot proceed except in strict accordance with the mode provided by statute. It has no right or authority to adopt any other mode than that

86          State *v.* Commrs. White Pine Co.          [Sup. Ct.

Opinion of the Court—Murphy, C. J.

provided for and pointed out by the statute. It possesses no common law jurisdiction or powers. The statute is its guide, and a strict adherence to it is essential. All the authorities are to this effect, and there can be no safety in any other rule. If we were to hold that the board could act on the claim or demand under consideration after the objections had been filed, and suit commenced in the district court, it would defeat the object of the law; and the taxpayer would have no protection whatever, as against the arbitrary action of the board. Leave, when once given to go outside of the statute, and make rules and regulations to govern cases such as the one under consideration, would be dangerous, not only to the letter but the spirit of the law.

In reply to the argument of counsel for respondent, the board has no power to pass upon the sufficiency of the pleadings. The moment objections were filed with the clerk to the allowance of the claim or demand against the county, the board should have discontinued the hearing of the subject matter, and the further consideration of the claim or demand must be postponed for at least ten days. At the expiration of the ten days, it may proceed to act upon the claim or demand, unless suit has been commenced; and if suit has been commenced, and the board has been notified of that fact, it cannot proceed to act on the claim until the judgment of the court is filed in its office. The statute is too plain to be misconstrued. The board has no discretion in the matter, whatever. If the contention of the counsel was to prevail, what would be the result? A taxpayer appears before it, and files his objections to the board taking action on a claim or demand then under consideration, and asks that the matter be postponed for ten days, to give him an opportunity to test the legality or ownership of the claim or demand in a court of competent jurisdiction. The board adjourns for twelve days. At the expiration of ten days a summons is issued out of the district court and served on the commissioners, to which suit the members of the board are made parties defendant. After hearing read the complaint, one of its members makes a motion, the tenor of which is, that the action be disregarded because the complaint does not state facts sufficient to constitute a cause of action against the defendants; and the motion prevails, and the board pro-

ceeds, and acts on the claim or demand. Thus, we have the anomaly of a board of county commissioners passing upon the sufficiency of pleadings in a case to which it was a party defendant. It was the duty of the board, when it met on the 16th day of December, 1893, to have continued the further hearing of the matter then under consideration until the final determination of the controversy by the court. There is no provision of the statute pointing out any other course. Nor can we concede to the request of the counsel, and pass upon the sufficiency of the complaint ourselves. That is the duty of the judge who presides over the court in which the complaint is filed; and under our liberal form of practice, if the judge before whom the case is to be tried is of the opinion that the complaint is insufficient, he can and will allow it to be amended.

Of the right of an individual taxpayer to commence and maintain an action to determine the legality or ownership of a claim or demand presented against the county, we do not entertain the remotest doubt. Upon this subject the Supreme Court of the United States, in the case of *Crampton* v. *Zabriskie*, 101 U. S. 609, said: " Of the right of resident taxpayers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county, or the illegal creation of a debt, which they, in common with other property holders of the county, may otherwise be compelled to pay, there is, at this day, no serious question. The right has been recognized by the state courts in numerous cases; and from the nature of the powers exercised by municipal corporations, the great danger of their abuse, and the necessity of prompt action to prevent irremediable injury, it would seem eminently proper for courts of equity to interfere, upon the application of the taxpayer of a county, to prevent the consummation of a wrong, when the officers of those corporations assume, in excess of their powers, to create burdens upon property holders."

For authorities on this subject, see Dill. Mun. Corp. (3d ed.) sec. 914, *et seq*.

Prior to the enactment of the statute of 1893, under and by virtue of section 1962, Gen. Stats., any taxpayer of the county might appear before the board of county commissioners, and oppose the allowance of any claim or demand against the

county, but the act did not stay the proceedings of the board. It might entertain the objections, or disregard them, as to it might seem fit. There was no appeal from its decision, and the taxpayer was without a remedy, except by filing a bill in equity and asking for a restraining order, which, in the majority of cases, on account of the absence of the judge from the county, could not be done until after the mischief complained of had been consummated. The act of 1893 was passed with a view to remedy the defect in the law, and when objections are filed to the allowance of a claim or demand the board must discontinue the further consideration of the claim or demand for at least ten days. If at the end of ten days no suit has been commenced, the board may proceed and pass upon the claim or demand; but if a suit has been commenced the board is divested of all jurisdiction, and cannot act until the final determination of the controversy by the court, for its duties are definitely prescribed by the act, and it cannot exceed the powers therein conferred upon it.

It therefore follows that the board of county commissioners of White Pine county had no jurisdiction over the subject matter on the 16th day of December, 1893; and the order made and entered on its minutes on that day, authorizing and directing the auditor of White Pine county to draw his warrant against the general fund in the county treasury, in favor of W. L. Davis, for the sum of $3,421 35, was absolutely null and void, and must be set aside, and it is so ordered.