# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

No. 01-3210
_____

| | | |
|---|---|---|
| Scott Booth; Thomas D. Loyd; Frank Solchaga; David Witte; Scott Wyman; Charles Perrin; Knute Gladen; Michael Seeber; Terry Nyblom; Stephen Blake; Richard Doyle; William J. Hageman; Charles W. Hurd; Kyle Knutson; Jim Lovestar; Yves Nadeau; Pradeep Ramanathan, on behalf of themselves and all others similarly situated, | * * * * * * * * * | |
| | * | |
| Plaintiffs-Appellants, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District of |
| | * | Minnesota. |
| Sheryl Ramstad Hvass, Commissioner of Corrections; Michael O'Keefe, Commissioner of Human Services; Charles R. Weaver, Jr., Commissioner of Public Safety; Christine Jax, Commissioner of Children, Families, and Learning for the State of Minnesota, | * * * * * * * | |
| | * | |
| Defendants-Appellees, | * | |
| | * | |
| Domestic Abuse Project (DAP); Central Minnesota Task Force on Battered Women; Lakes Crises Center, | * * * | |
| | * | |
| Intervenors Defendants-Appellees. | * | |

_____

Submitted: May 13, 2002
Filed:  September 11, 2002
_____

Before WOLLMAN, BRIGHT, and GIBSON, Circuit Judges.
_____

BRIGHT, Circuit Judge.

## I.    Background

On October 17, 2000, the plaintiffs-appellants, a group of male Minnesota taxpayers, filed a complaint in the United States District Court for the District of Minnesota, seeking a declaratory judgment that the Minnesota statutory scheme for dispersing state and federal funds to assist battered women and victims of domestic abuse is unconstitutional.  The men alleged that the statutory scheme, Minn. Stat. §§ 611A.31-375 (2000) (hereinafter "the domestic abuse statutes"), discriminates against men in violation of the Equal Protection Clause of the United States Constitution by facilitating the expenditure of millions of dollars to assist battered women, but offering no money to assist battered males.  The appellants also sought an injunction prohibiting the defendants-appellees (various Minnesota State department commissioners) from spending funds under, or promoting the objectives of, the domestic abuse statutes.[1]

_____

[1]Appellee Charles Weaver, the Commissioner of the Department of Public Safety, administers the domestic abuse statutes through a division of the Department of Public Safety:  the Center for Crime Victim Services ("the Center").  Under sections 611A.31-.361 of the domestic abuse statutes, the Center provides grants of state and federal funds to programs that assist battered women and domestic abuse victims. Under sections 611A.37-.375, the Center also makes per diem payments to various shelters to reimburse the shelters for costs of providing their clients with

-2-

Three organizations that provide services and receive funding under the statutes intervened.[2] In January 2001, the appellants moved for summary judgment. The defendants-appellees and intervenors-appellees (collectively "appellees") also moved for summary judgment. The district court held oral argument on the motions. On August 13, 2001, the district court[3] issued an opinion and order denying appellants' motion for summary judgment and granting summary judgment to the appellees. The court concluded that the appellants lacked standing to pursue their claims in federal court.

Appellants timely filed a notice of appeal. On October 9, 2001, appellants filed a statement of issues that included not only the question of appellants' standing, but also the merits of the case. On October 18, the appellees moved this court to limit the issues on appeal to the appellants' standing or, in the alternative, for a prehearing conference. On October 31, an order was entered taking the motion with the case and denying the alternative request for a prehearing conference.

The appellants argue to this court that they have standing as state taxpayers[4] to sue in federal court to prevent the defendants Minnesota state officials from

---

food, lodging, and safety.

[2]Domestic Abuse Project, Central Minnesota Task Force on Battered Women, and Lakes Crises Center, all organizations that provide services to victims of domestic violence and receive funding through the domestic abuse statutes, moved to intervene in the lawsuit. Magistrate Judge Jonathan G. Lebedoff granted that motion.

[3]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

[4]In the district court, the appellants also alleged general standing to bring their case in federal court. The district court held that the appellants failed to allege a direct injury. The appellants do not make a general standing argument on appeal.

spending public funds under the domestic abuse statutes because the domestic abuse statutes unlawfully discriminate against men based upon their sex.

## II.   Discussion

We review *de novo* a district court's order granting summary judgment. At the summary judgment stage, the party invoking federal court jurisdiction must set forth by affidavit and other evidence specific facts that, when accepted as true, support a claim of standing. See Campbell v. Minneapolis Pub. Hous. Auth. ex rel. City of Minneapolis, 168 F.3d 1069, 1073 (8th Cir. 1999). We examine whether, after viewing all evidence in a light most favorable to the appellants and drawing all reasonable inferences in their favor, there is a genuine issue as to appellants' standing. See Fed. R. Civ. P. 56(c).

### A.  Prior Case Law

In Frothingham v. Mellon, 262 U.S. 447, 487 (1923), the Supreme Court ruled that a federal taxpayer's interest in United States treasury funds is too small and indeterminable to give that taxpayer standing to sue in federal court. The Court distinguished the municipal taxpayer, who has standing to sue to enjoin the illegal disposition of his or her taxes. Id. at 486 (citing Crampton v. Zabriskie, 101 U.S. 601, 609 (1880)).

In Doremus v. Board of Educ., 342 U.S. 429 (1952), the Supreme Court determined that a state taxpayer did not have standing in federal court to challenge a state statute that required a Bible reading at the opening of each public school day as a violation of the Establishment Clause. The Court reasoned that the plaintiffs did not allege that the Bible reading "adds any sum whatever to the cost of conducting the school. . . .[Or] that the Bible reading increases any tax they do pay or that as

taxpayers they are, will, or possibly can be out of pocket because of it." Id. at 433.
The court continued:

> what the Court said of a federal statute as equally true when a state Act
> is assailed: "The party who invokes the power must be able to show not
> only that the statute is invalid but that he has sustained or is immediately
> in danger of sustaining some direct injury as the result of its
> enforcement, and not merely that he suffers in some indefinite way in
> common with people generally."

Id. at 434 (quoting Frothingham, 262 U.S. at 488). The taxpayer can meet this test
with a "good-faith pocketbook action," which is an injury to the taxpayer's "direct
and particular financial interest . . . ." Id. at 434-35.

In 1968, the Court held that a federal taxpayer has standing where: (1) the
challenged statute is an exercise of the legislature's taxing and spending powers; and
(2) the statute exceeds specific constitutional limitations on those powers. Flast v.
Cohen, 392 U.S. 83, 102-03, 106 (1968). The Court further held that the
Establishment Clause is a specific limit on the power of Congress to tax and spend.
Id. at 104. While the Court has never declared that the Establishment Clause is the
only constitutional provision that satisfies the Flast test for taxpayer standing, it has
never found any other constitutional provision that satisfies Flast.

In 1989, we considered whether a taxpayer had standing to challenge a
Minnesota statute allowing public high school students to take advanced courses at
colleges, some of which were religiously affiliated. See Minnesota Fed'n of Teachers
v. Randall, 891 F.2d 1354 (8th Cir. 1989). We determined that the case turned on
whether Doremus required a state taxpayer to show that a state's violation of the
Establishment Clause increased his or her tax burden, and concluded, in harmony
with Flast, that Doremus contained no such requirement. Thus, Randall stands for the
proposition that state taxpayers, just like federal taxpayer plaintiffs, "must only show

-5-

that there has been a disbursement of tax money in potential violation of constitutional guarantees" when bringing Establishment Clause challenges. Randall, 891 F.2d at 1358.

Randall did not completely adopt the Flast test, however. We noted that the Establishment Clause was a specific limit on the taxing and spending power of Congress, Randall, 891 F.2d at 1356 n.2, but did not address whether state taxpayers must satisfy a requirement that the statute exceed a specific constitutional limit on spending. We specifically mentioned that "the precise scope of Flast [is] uncertain." Randall, 891 F.2d at 1356 n.2.

More recently, in Tarsney v. O'Keefe, 225 F.3d 929 (8th Cir. 2000), we used the Flast test to determine whether a state taxpayer had standing to challenge state funding of abortions for low-income women as a violation of the Free Exercise Clause. In reaching our decision, we reasoned that, whereas expenditure of public money in the aid of religion presents a direct Establishment Clause injury to the taxpayer, no Free Exercise Clause injury arises from a government expenditure until the expenditure directly prevents the taxpayer's free exercise of religion. Id. at 936. Only at that point is the injury direct and taxpayer status irrelevant. Id. We concluded that the Free Exercise Clause was not a constitutional provision that placed a specific limitation on the government's spending.

## B. Analysis

The appellants argue that Crampton v. Zabriskie, 101 U.S. 601 (1880), governs this case. In Crampton, the Supreme Court held that county taxpayers have a direct interest in the application of the county's funds and they may sue for injunctive relief from illegal disposition of those funds. Id. at 609. The Supreme Court reaffirmed this position in Frothingham, 262 U.S. at 486, where it noted that municipal taxpayers have a direct interest in the municipality's application of its moneys, and remedy by

-6-

injunction is warranted. Appellants argue that under <u>Crampton</u> taxpayers may sue departments of state government (e.g., the departments of Corrections and Public Safety) because those departments, like municipalities and counties, are subdivisions of the state.

We are not convinced by this line of reasoning. In our view, departments of the state are more analogous to the state itself than they are to counties. The taxpayer base for state departments is the same as that of the state. A taxpayer's interest in the funds allocated to a state agency is similar, perhaps identical, to the taxpayer's interest in the general state treasury. Therefore, case law addressing standing for county and municipal taxpayers is inapposite to the instant case.

Appellants also argue that they have standing under <u>Flast</u> itself, as applied in <u>Tarsney</u>. Assuming *arguendo* that the domestic abuse statutes are exercises of state spending power, rather than a regulatory power, appellants' argument requires that we resolve whether the Fourteenth Amendment's Equal Protection Clause is a specific constitutional limit on the spending powers of the Minnesota state government.

Appellants argue that because the Supreme Court's Equal Protection jurisprudence holds that the federal and state governments violate the Equal Protection Clause when they fund discriminatory institutions, the Equal Protection Clause can be a limitation on the taxing and spending powers of government. Appellants cite a number of Supreme Court cases to support this argument. <u>E.g. Mississippi Univ. for Women v. Hogan</u> 458 U.S. 718 (1982) (holding the Equal Protection Clause barred sex discrimination in admissions to state-supported nursing school); <u>Frontiero v. Richardson</u> 411 U.S. 677 (1973) (holding that the Equal Protection Clause barred sex discrimination in public spending for benefits to military personnel). The cases cited by the appellants are distinguishable from the instant case. Standing was not an issue in any of them; the plaintiffs all alleged direct injuries.

Appellants continue their argument by analogy, contending that because public schools receive tax dollars, a taxpayer would have standing to challenge state funding of a school that is racially or sexually discriminatory in its admissions. Under this theory, appellants believe they have shown that the Equal Protection Clause acts as a specific limit on governmental spending. Finally, under Flast, the appellants argue that they have taxpayer standing to challenge the alleged equal protection violation perpetrated by Minnesota under the domestic abuse statutes.

Our line of precedent leads us to the opposite conclusion. Under Tarsney, in order to determine whether the Equal Protection Clause is a specific limitation on the taxing and spending powers of state government, we consider whether the expenditure of public funds in a discriminatory manner violates the Equal Protection Clause. A taxpayer whose tax money is used in a discriminatory manner suffers no injury under the Equal Protection Clause unless and until an expenditure facilitates discrimination against him or her. At that point, taxpayer status is irrelevant to standing. In this case, the appellants do not have taxpayer standing to challenge state expenditures to benefit battered women under the Equal Protection Clause.

## III. Conclusion

The appellants lack taxpayer standing to bring suit in federal court. We affirm the district court's grant of summary judgment of dismissal.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-