CONCURRING IN FULL IN THE MAJORITY OPINION
SUTTON, Circuit Judge,
concurring.
Finally, the varied sources that combine to fund municipal treasuries discussed in Judge Sutton’s concurrence also do not affect the viability of this doctrine. From the perspective of a municipal taxpayer, funding unconstitutional conduct may be cheap because other sources subsidize the *221 expenditures. But, municipal-taxpayer standing has never hinged on the amount by which an expenditure would affect the municipal treasury. So long as municipal funds are at stake, the amount of loss is irrelevant. An injury has occurred and standing exists whether a municipality unconstitutionally spends $1,000,000 with ten percent of the funding originating in municipal taxes, or $100,000 entirely from municipal taxes. Therefore, even in light of the circumstances Judge Sutton identifies, I do not find the propriety of our long-established doctrine of municipal standing difficult to grasp or its justification in need of reconsideration.
I join the majority opinion in full and write separately (1) to identify a tension between the municipal-taxpayer-standing doctrine and modern standing principles and (2) to elaborate why the doctrine applies to a local expenditure that purports not to increase any burden on the local public fisc but to save money.
1. Whatever the virtue of a line between state-and municipal-taxpayer standing at its birth 88 years ago, see Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), the point of the demarcation is difficult to grasp today. Start with the reality that it is hard to draw a meaningful distinction between the stakes of taxpayers in litigation based solely on geography, whether in 1923 or today. Thirty-two cities currently have populations larger than at least one State, and New York City, the largest municipality in the country, holds more people than 39 States. See Am. Atheists, Inc. v. City of Detroit Downtown Dev. Auth, 567 F.3d 278, 286 (6th Cir.2009). If the point of limiting taxpayer standing is to avoid the resolution of “generalized grievances” in federal court, see Hein v. Freedom From Religion Found., Inc., 551 U.S. 587, 600 n. 2, 127 S.Ct. 2553, 168 L.Ed.2d 424 (2007), why does a New Yorker have standing based on an injury shared with 8,275,000 others while a resident of North Dakota lacks standing based on an injury shared with 647,000 others? See Population Division, U.S. Census Bureau, Annual Estimates of the Resident Population for the United States, Regions, States & Puerto Rico (2009), available at http://www. census.gov/popest/states/NST-ann-est. html; Population Division, U.S. Census Bureau, Annual Estimates of the Population for Incorporated Places over 100,000 (2007), available at http://www.census.gov/ popesVcities/SUB-EST2007.html. If a state taxpayer has not “sustained” or is not “immediately in danger of sustaining some direct injury as a result” of enforcement of an allegedly unconstitutional law and “merely ... suffers in some indefinite way in common with people generally,” Doremus v. Bd. of Educ., 342 U.S. 429, 434, 72 S.Ct. 394, 96 L.Ed. 475 (1952) (internal quotation omitted), why isn’t the same true for a meaningful number of city taxpayers? The gross population of the largest 37 cities (41.7 million) after all is roughly the same as the gross population of the 23 smallest States. See U.S. Census Resident Population, supra; U.S. Census Incorporated Places, supra.
While the municipal-taxpayer doctrine has stood still, moreover, standing principles have moved on. In the last few decades, the Court has made it clear that “[a] plaintiff must allege personal injury fairly traceable to the defendant’s allegedly unlawful conduct and likely to be redressed by the requested relief.” Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Yet how has a municipal taxpayer, whether from a large city or a small one, suffered a “personal injury” traceable to the passage of a general law merely because the law requires an appropriation of some money, and usually an infinitesimal amount of money from the *222 taxpayer? Standing law safeguards the separation of powers through the injury-in-fact requirement, insisting that a claimant “raising only a generally available grievance about government ... does not state an Article III case or controversy.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 574, 576-77, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Yet how has a municipal-taxpayer claimant not done just that: raised nothing more than a claim that the municipality must follow the law? “[C]onvert[ing] the undifferentiated public interest in [government’s] compliance with the law into an ‘individual right’ vindicable in the courts ... would enable the courts ... to become virtually continuing monitors of the wisdom and soundness of [government] action.” Id. at 577. Yet if that is so, shouldn’t federal courts insist that claimants challenging the validity of federal, state and municipal laws do more to establish injury in fact, traceability and redress-ability than allege that they paid their taxes?
Just as the state/city taxpayer dichotomy has grown more curious since Frothingham, so too has the gap in reasoning between the municipal-taxpayer-standing doctrine and prudential limitations on standing, namely that a claimant must suffer the type of injury that the constitutional provision at issue protects. See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 475, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). The municipal-taxpayer-standing doctrine pays heed only to the taxes paid, not to the nature of the constitutional claim. Here, as a result, the doctrine has permitted teachers who never witnessed anything remotely creating an Establishment Clause violation (because they taught at the old non-religious school, not at the new religious one) to challenge the law, even though the claimants seemingly could not satisfy prudential standing limitations. See Maj. Op. at 207-09; Barrows v. Jackson, 346 U.S. 249, 256, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953).
One other oddity surrounds the doctrine. Perhaps in 1923 it was easy to speak of city and state treasuries as distinct. Yet today, particularly in the context of a public school case, it is pure fiction to think of municipal (or county) treasuries as holding money raised only through local taxes. Most city budgets contain state and federal dollars, often substantial sums of them, and many school district budgets consist primarily of state and federal dollars. On average, the federal government supplies 8.5% of the public school system funds, the state governments 48.7% of the funds and local sources 42.8% of the funds. At one extreme, local funds in Hawaii make up just 1.7%, while state sources account for more than 90%. Nat’l Center for Education Statistics, Revenues & Expenditures for Public Elementary and Secondary Education: School Year from 2002-03, tbl.2 (2005). Because the Court has long shown a concern for developing a “principled way of distinguishing” claimants with standing from those without it, Daimler-Chrysler Corp. v. Cuno, 547 U.S. 332, 348, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006), there is much to be said for reconsidering the municipal-taxpayer-standing doctrine or, if not that, at least for recalibrating it to account for the world the way it is.
Save for one thing: The Supreme Court created the distinction and has stood by it for some time, requiring lower courts like ours to apply it as is. See Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). The Court suggested the doctrine in Crampton v. Zabriskie, 101 U.S. 601, 25 L.Ed. 1070 (1879), and formally adopted it in Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), explaining that municipal taxpay *223 ers, like the shareholders of a private corporation, have an immediate interest in how the municipality spends the resources they contributed to the entity. Id. at 487. In Doremus v. Board of Education, 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952), the Court clarified the other side of the coin — -that state taxpayers (and federal ones as well) have no such standing based on taxpayer status alone. And in 2006, the Court left no doubt about the continuing relevance of the distinction, when all nine members of the Court applied it to a case on review from this court. See Cuno, 547 U.S. at 345, 349-50, 126 S.Ct. 1854; id. at 354, 126 S.Ct. 1854 (Ginsburg, J., concurring). If any modification to the doctrine is appropriate, it must come from the Court.
2. Under current law, the municipal-taxpayer-standing doctrine applies to all appropriations, even those that purport to be “cost-saving measures.” Pet. Rehearing at 12; see Dissent at 5. A contrary approach would force litigants and courts to determine at a fixed point in time, presumably when the lawsuit is filed, whether a law designed to be implemented over a period of years will net out in the black or in the red. That asks a lot, and more perhaps than the federal courts can deliver. As the majority correctly points out, a net-loss requirement raises a host of insurmountable implementation problems.
The roots of the municipal-taxpayer-standing doctrine in corporate law pose a conceptual problem as well. Let us assume for the sake of argument that the Kingswood contract violates the Establishment Clause and that the unconstitutional expenditures may one day amount to local “savings.” Would a fiduciary’s illegal expenditures be beyond reproach if the same could be said about a company’s spending decisions — that the illegal acts eventually would save the company money? I don’t think so, and the same should be true here. If a corporate fiduciary misspends shareholder funds, his liability (as opposed to any damages) does not turn on whether he can show that the expenditures turned into a good investment or a bad one. Imagine a fiduciary defending a breach on the ground that, in the year before the illegal expenditure, the corporation foolishly, but legally, spent more money on a related program or on the ground that deflation insulated the breach from liability. That is not how it works. An appropriation is an appropriation, and if it violates fiduciary duties or the Establishment Clause, a shareholder or a city taxpayer, as the case may be, may challenge the expenditure under current law.