Robert C. WARNOCK, Plaintiff,

v.

NATIONAL FOOTBALL LEAGUE, Arizona Cardinals, Inc. dba Arizona Cardinals, Atlanta Falcons Football Club LLC dba Atlanta Falcons, Baltimore Ravens Limited Partnership dba Baltimore Ravens, Buffalo Bills, Inc. dba Buffalo Bills, Chicago Bears Football Club Inc. dba Chicago Bears, Pittsburgh Steelers Inc. dba Pittsburgh Steelers LLC, Cleveland Browns LLC dba Cleveland Browns, Dallas Cowboys Football Club Ltd dba Dallas Cowboys, Denver Broncos Football Club dba Denver Broncos, Detroit Lions, Inc. dba Detroit Lions, Green Bay Packers Inc. dba Green Bay Packers, Houston NFL Holdings LP dba Houston Texans, Indianapolis Colts, Jacksonvill Jaguars Ltd. dba Jacksonville Jaguars, Kansas City Chiefs Football Club Inc. dba Kansas City Chiefs, Miami Dolphins, Minnesota Vikings Football Club LLC dba Minnesota Vikings, New England Patriots, New Orleans Saints LP dba New Orleans Saints, New York Football Giants dba New York Giants, New York Jets Football Club Inc. dba New York Jets, Oakland Raiders LP dba Oakland Raiders, Panthers Football LLC dba Carolina Panthers, Philadelphia Eagles, Pittsburgh Steelers Sports, Inc. dba Pittsburgh Steelers, San Diego Chargers Football Co. dba

San Diego Chargers, San Francisco 49ers Ltd. dba San Francisco 49ers, Seattle Seahawks Inc. dba Seattle Seahawks, St Louis Rams Football Co. dba St Louis Rams, Tampa Bay Buccaneers, Tennessee Titans LLP dba Tennessee Titans, Washington Football Inc. dba Washington Redskins, Defendants.

Civil Action 04–330.

United States District Court, W.D. Pennsylvania.

Feb. 9, 2005.

William James Helzlsouer, Dravosburg, PA, for Plaintiff.

Michael J. Manzo, Klett, Rooney, Lieber & Schorling, Pittsburgh, PA, Gregg H. Levy, James M. Garland, Steven E. Fagell, Covington & Burling, Washington, DC, for Defendant.

### MEMORANDUM ORDER

CONTI, District Judge.

Pending before the court is the motion by defendants National Football League and its member clubs (the "NFL"), including Pittsburgh Steelers Sports, Inc. (the "Steelers") and Philadelphia Eagles Limited Partnership (the "Eagles") (collectively referred to as "defendants"), to dismiss the complaint of plaintiff Robert C. Warnock ("plaintiff" or "Warnock") for lack of standing (Doc. No. 5). Plaintiff in his complaint alleges that defendants violated the Sherman Antitrust Act, 15 U.S.C. §§ 1–2, and the Clayton Act, 15 U.S.C. § 15, by acting in concert to force NFL host cities and counties to build new football stadiums—including Pittsburgh's Heinz Field, home of the Steelers—and lease the stadiums to NFL clubs under favorable lease terms. Plaintiff alleges in particular that "by limiting the number and barring public ownership of NFL franchises, defendants forced Allegheny County to pay ... far more to build Heinz Field and to agree to more onerous lease terms to keep the Steelers in Pittsburgh than a marketplace free of these restraints would have demanded." Pl.'s Compl. ¶ 64. Defendants argue in their motion to dismiss that plaintiff, a municipal taxpayer purporting to sue "[o]n behalf of Allegheny County," lacks standing to assert his antitrust claims. The court agrees with defendants and will dismiss plaintiff's suit for lack of standing for the reasons set forth below.

### Facts Accepted As True For Purposes of Deciding the Motion

In deciding defendants' motion to dismiss for lack of standing, the merits of plaintiff's substantive claims are not at issue. *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Rather, the court will focus on those facts relevant to whether plaintiff has alleged "a personal stake in the action to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Id.* at 498–99, 95 S.Ct. 2197. The facts forming the basis of plaintiff's relationship to the underlying claims are scant. Plaintiff alleges he is "an individual and taxpayer" who lives in Pittsburgh, Pennsylvania. Pl.'s Compl. ¶ 1. Plaintiff purports to bring the action "on behalf of Allegheny County" against "the NFL and all of its member teams for ongoing violations" of federal antitrust laws. *Id.* ¶ 58. Plaintiff does not allege that he is a prospective professional football owner, or that he is even a consumer of defendants' product.

Plaintiff alleges that the NFL and its member teams have created a system in which demand for NFL franchises remains higher than the number of regions actually awarded franchises. *Id.* ¶ 8. In effect, plaintiff argues that the system created by the NFL is one of "franchise free agency." *Id.* Plaintiff contends that the NFL and its member teams exploit this system in order to apply leverage to the cities, regions and

states of existing NFL teams to obtain taxpayer subsidies for the construction of new stadiums. *Id.* According to plaintiff, the NFL and the Steelers utilized the existing system—and, in the process violated federal antitrust laws—by forcing Allegheny County to construct Heinz Field for the Steelers on extremely favorable lease terms.

The crux of plaintiff's claims are as follows:

The citizens of Allegheny County were willing to build a new stadium for the Pittsburgh Steelers and agree to lease terms that allowed the franchise to field a competitive team while remaining profitable. Allegheny County residents never intended, however, to spend tax dollars merely to increase the Steelers' profits or to increase the franchise value. Yet, the cumulative effect of the NFL's antitrust violations forced Allegheny County to pay money far more [sic] to build Heinz Field and to agree to more onerous lease terms to keep the Steelers in Pittsburgh than a marketplace free of these trade restraints would have demanded. Execution of the lease required consent by the National Football League.

*Id.* ¶ 64. According to plaintiff, the Steelers' lease terms provide that the team does not pay an annual base rent, that the team receives nearly all of the new revenue from Heinz Field, and that the Sports & Exhibition Authority of the City of Pittsburgh and Allegheny County (the "Sports & Exhibition Authority") will be responsible for capital repairs and future expenditures at Heinz Field. *Id.* ¶¶ 57–60.

With respect to defendants' alleged antitrust violations, plaintiff requests the court to award the following relief: (1) declare that the Heinz Field Stadium lease is voidable at Allegheny County's discretion; (2) grant compensatory and punitive damages to Allegheny County in excess of $200

million dollars against the NFL and its member teams, trebling such damages if the court finds that defendants violated the Sherman Antitrust Act and the Clayton Act; (3) order plaintiff attorney fees and litigation costs; and (4) order other relief as the court deems just. *Id.*

Defendants filed their motion to dismiss arguing that plaintiff lacks standing to pursue his claims. Defendants contend that plaintiff cannot satisfy the constitutional requirements of standing encompassed in Article III of the United States Constitution solely on the basis that he is a municipal taxpayer. Defendants further assert that even if plaintiff alleged sufficient evidence to satisfy Article III standing requirements, plaintiff would be barred from pursuing his claims based upon prudential limitations to standing because plaintiff's claims amount to (1) a generalized grievance shared by all Allegheny County taxpayers and/or (2) an attempt to assert the legal rights of a third party. The parties requested oral argument, and a hearing on defendant's motion to dismiss was held on October 8, 2004. At that time, plaintiff filed with the court letters from Allegheny County and the Sports & Exhibition Authority which stated that neither entity wanted to join plaintiff's suit against defendants. *See* Doc. No. 15.

### Standard of Review

A motion to dismiss tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). In deciding a motion to dismiss the court is not opining on whether the plaintiff will be likely to prevail on the merits. Rather, when considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins,* 281 F.3d 383, 388 (3d Cir.2002). The pleader is required to "set forth sufficient information to out-

line the elements of his claim or to permit inferences to be drawn that these elements exist." *Kost,* 1 F.3d at 183 (citing 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed.1990)).

When a motion to dismiss is brought on the basis that a party lacks standing, that party bears the burden of proving the requisite standing to pursue his or her claim. *ACLU–NJ v. Township of Wall,* 246 F.3d 258, 261 (3d Cir.2001). For purposes of determining whether the party alleged sufficient facts to survive a motion to dismiss for lack of standing, the court must accept as true all material allegations set forth in plaintiff's complaint and must construe those facts in favor of the plaintiffs. *Storino v. Borough of Point Pleasant Beach,* 322 F.3d 293, 296 (3d Cir.2003). The court retains the power to allow or to request the plaintiff to provide additional information—through amending the complaint or submitting affidavits alleging particularized facts—in support of the plaintiff's standing. *Warth,* 422 U.S. at 501–02, 95 S.Ct. 2197. The district court may also hold an evidentiary hearing to determine standing. *In re Zettlemoyer,* 53 F.3d 24, 27 (3d Cir.1995). If, however, "after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed." *Id.* at 502, 95 S.Ct. 2197.

### Analysis

### I. Standing Generally

The doctrine of standing "asks whether a litigant is entitled to have a federal court resolve his [or her] grievance." *Kowalski v. Tesmer,* 543 U.S.——, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004). Standing is based upon both constitutional and prudential components, and a challenge to a plaintiff's standing in federal court requires the court to examine whether the plaintiff has a personal stake in the action that warrants the invocation of federal court juris-

diction. *Warth,* 422 U.S. at 498–99, 95 S.Ct. 2197. The constitutional requirements for standing ensure that a plaintiff has an actual "case or controversy" pursuant to the justiciability demands of Article III. *Id* at 498, 95 S.Ct. 2197. In order to meet these requirements, the plaintiff must allege a sufficient injury in fact, fairly traceable to the actions of the defendant, that can be redressed by the courts. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The injury must be concrete and particularized, as well as "actual or imminent, not conjectural or hypothetical." *Id.* (internal quotations and citations omitted). The causation prong requires that the injury be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Bennett v. Spear,* 520 U.S. 154, 167, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). Finally, redressability examines whether the relief sought, if granted by the court, will likely alleviate the particularized injury alleged by the plaintiff. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Taken together, these three elements comprise the "irreducible constitutional minim[a] of standing." *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130.

In addition to the constitutional requirements for standing, federal courts also place prudential limitations on the right of a party to maintain an action. These prudential limitations have been referred to as "matters of judicial self-governance" that are necessary to prevent the courts from deciding abstract questions where other government institutions might be more competent and where "judicial intervention may be unnecessary to protect individual rights." *Warth,* 422 U.S. at

499–500, 95 S.Ct. 2197. As stated by the United States Court of Appeals for the Third Circuit: "Prudential considerations constitute a supplemental aspect of the basic standing analysis and address concerns regarding the need for judicial restraint." *Oxford Associates v. Waste System Authority*, 271 F.3d 140 (3d Cir.2001). The court of appeals further stated that these prudential standing considerations require:

(1) a litigant assert his [or her] own legal interests rather than those of third parties, (2) courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances, and (3) a litigant demonstrate that her interests are arguably within the zone of interests intended to be protected by the statute, rule or constitutional provision on which the claim is based.

*Id.* (quoting *Davis by Davis v. Philadelphia Housing Authority*, 121 F.3d 92, 96 (3d Cir.1997)).[1]

## II. Municipal Taxpayer Standing

### A. In General

One way in which litigants have attempted to achieve standing in federal court is through their status as municipal taxpayers. If standing is "one of the most amorphous [concepts] in the entire domain of the public law," *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), nowhere is this better demonstrated than in the area of municipal taxpayer standing. The doctrine of municipal taxpayer standing suggests that, under limited circumstances, a municipal taxpayer may have a sufficient connection to assert a claim based solely upon the litigant's status as a municipal resident and taxpayer. *Rocks v. City of Philadelphia*, 868 F.2d 644, 648 (3d Cir.1989). The genesis for municipal taxpayer standing lies in the seminal United States Supreme Court decision in *Frothingham v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). In that opinion, the Supreme Court determined that the plaintiff's status as a federal taxpayer was insufficient to confer standing to challenge a federal appropriations bill. In effect, the taxpayer's claim amounted to a generalized grievance to have an act of Congress declared unconstitutional. *Id.* at 488–89, 43 S.Ct. 597.

The court in dicta, however, recognized "the rule" that "resident taxpayers may sue to *enjoin* an illegal use of the moneys of a municipal corporation." *Id.* at 486, 43 S.Ct. 597 (emphasis added). The court further reasoned:

The interest of a taxpayer of a municipality in the application of its moneys is direct and immediate and the *remedy by injunction* to prevent their misuse is not inappropriate. It is upheld by a large number of state cases and is the rule of this court. Nevertheless, there are decisions to the contrary. The reasons which support the extension of the *equitable remedy* to a single taxpayer in such cases are based upon the peculiar relation of the corporate taxpayer to the corporation, which is not without some resemblance to that subsisting between stockholder and private corporation.

*Id.* at 486–87, 43 S.Ct. 597 (citations omitted) (emphasis added). The court stated that the relationship of a federal taxpayer

1. Prudential barriers to standing may be abrogated by Congress. *Warth*, 422 U.S. at 501, 95 S.Ct. 2197. As long as constitutional standing requirements are met, "persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others, and indeed, may invoke the general public interest in support of their claim." *Id.* Congressional abrogation of a prudential barrier to standing is not at issue in the present case.

to the federal government was different because:

His interest in the moneys of the treasury—partly realized from taxation and partly from other sources—is shared with millions of others, is comparatively minute and indeterminable, and the effect upon future taxation, of any payment out of the funds, so remote, fluctuating and uncertain, that no basis is afforded for an appeal to the preventive powers of a court of *equity*.

*Id.* (emphasis added).

The Court in *Frothingham* cited an earlier decision, *Crampton v. Zabriskie*, 101 U.S. 601, 11 Otto 601, 25 L.Ed. 1070 (1879), in support of its conclusion that, on some occasions, a municipal taxpayer may have standing to obtain equitable relief from a municipal corporation.[2] In *Crampton*, the board of freeholders of Hudson County, New Jersey, adopted a resolution to purchase certain lots of land in Jersey City to build a courthouse. The board purchased the land and issued bonds to pay the owner of the land. County taxpayers brought suit to compel the board to reconvey the land and for the owner of the land to reconvey the bonds, and to enjoin the owner's pending suit to enforce payment. The Court stated the following with respect to whether the litigants could continue their suit:

Of the right of resident tax-payers to invoke the interposition of a *court of equity* to prevent an *illegal disposition* of the moneys of the *county* or the illegal creation of a debt which they in common with other property-holders of

the county may otherwise be compelled to pay, there is at this day no serious question. The right has been recognized by the State courts in numerous cases; and from the *nature of the powers exercised by municipal corporations*, the great danger of their abuse and the necessity of prompt action to prevent irremediable injuries, it would seem eminently proper for *courts of equity* to interfere upon the application of the tax-payers of a county to prevent the consummation of a wrong, when the officers of those corporations assume, in excess of their powers, to create burdens upon property-holders.

*Crampton*, 101 U.S. at 609, 101 U.S. 601.

■ *Crampton* and *Frothingham* suggest at a minimum that a party may only assert municipal taxpayer standing if the party is (1) suing a governmental entity or representative; and (2) requesting equitable relief. Subsequent decisions have reaffirmed these dual requirements. *See Doremus v. Board of Education*, 342 U.S. 429, 433–34, 72 S.Ct. 394, 96 L.Ed. 475 (1952) (noting the "remedy by taxpayer's action to *restrain* unconstitutional acts which result in direct pecuniary injury"); *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (suit brought to enjoin municipal expenditures in violation of First Amendment Establishment Clause); *Rocks v. City of Philadelphia*, 868 F.2d at 648 (action to enjoin city from increasing the percentage of minority-owned businesses to be awarded bids in a city construction project under the equal protection clause); *United States. v. City*

---

**2.** Each time the Court in *Frothingham* discussed either federal taxpayer or municipal standing, the Court described the nature of relief as an equitable remedy against a government body or official. Plaintiff in the present case does not ask solely for equitable relief against Allegheny County. Indeed, no relief is sought against the municipal corporation. Rather, plaintiff requests a declaratory

judgment that the stadium lease is voidable at the county's discretion, as well as for compensatory and punitive damages to be awarded to the county for defendants' purported antitrust violations. Plaintiff also requests, "other relief as the court deems just." As noted, however, Allegheny County is not a defendant in this case. For further discussion, see part III of this opinion, *infra*.

*of New York*, 972 F.2d 464 (2d Cir.1992) (equity action brought by municipal taxpayer to void city contracts); *Cammack v. Waihee*, 932 F.2d 765 (9th Cir.1991) (suit brought for declaratory relief against State of Hawaii and City of Honolulu challenging constitutionality of Good Friday as an official holiday); *Hawley v. City of Cleveland*, 773 F.2d 736, 741 (6th Cir.1985) (suit brought to enjoin municipality from renting space to Catholic diocese for less than market value under First Amendment Establishment Clause).[3]

## B. Article III Limitations and Prudential Considerations

It is unclear whether municipal taxpayer standing is governed by Article III considerations or prudential considerations. The Court in *Frothingham* commented on the fact that federal taxpayers did not have a sufficient injury to bring suit, suggesting that the focus was on Article III limitations to standing. In *Flast v. Cohen*, 392 U.S. 83, 92–93, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), however, the Court stated that *Frothingham* could be read as either an Article III or a prudential barrier to standing. *Cohen* suggests that taxpayer standing is a form of Article III standing with a particular focus on the injury and redressability prongs of that analysis. *Id.* at 106, 88 S.Ct. 1942. The Court in *Cohen*,

however, discussed policy considerations in an attempt to differentiate the facts described in that decision from those in *Frothingham.* *Id.* at 105–06, 88 S.Ct. 1942. Regarding the confusion, the Court remarked: "The 'many subtle pressures' which cause policy considerations to blend into the constitutional limitations of Article III make the justiciability doctrine one of uncertain and shifting contours." *Id.* at 97, 88 S.Ct. 1942.

The United States Court of Appeals for the Third Circuit views the determination of whether a municipal taxpayer has a sufficient stake in the proceedings to invoke the court's jurisdiction as a prudential standing consideration. *Rocks v. City of Philadelphia*, 868 F.2d 644 (3d Cir. 1989). In *Rocks*, municipal taxpayers challenged the constitutionality of minority business enterprise participation requirements applied to a city construction project. The appellants argued that the city's actions to increase the percentage of minority-owned businesses in a bid specification for the city project were unconstitutional. The district court dismissed the complaint for lack of standing.

On appeal, the court of appeals recognized the Article III right of the appellants to bring suit against the city to enjoin an allegedly unconstitutional governmental action. *Id.* at 648. The court of appeals,

**3.** Defendants further suggest that municipal taxpayer standing is only available in situations where a party brings suit for a *constitutional violation*. The opinions cited by defendants appear to support this general proposition. *See, e.g., Rocks, supra.* In fact, in some of the opinions courts have explicitly framed the standing requirement as requiring an unconstitutional action. *See Freedom from Religion Foundation v. Zielke*, 845 F.2d 1463, 1470 (7th Cir.1988) ("[A] litigant may have standing as a municipal taxpayer to challenge *unconstitutional* acts that affect public finances ....") (emphasis added); *Hawley v. City of Cleveland*, 773 F.2d 736, 742 (6th Cir.1985) (Supreme Court allows

suits by local taxpayers "to *enjoin unconstitutional acts* affecting public finances.") (emphasis added). Furthermore, in an extensive study, Professor Nancy Staudt concluded that the courts "are *uniformly* resistant to municipal taxpayer suits alleging federal statutory violations." Nancy C. Staudt, *Taxpayers in Court*, 52 Emory L.J. 771, 883 & n. 306 (2003) (collecting cases) (emphasis added). The court, however, declines to add this element to municipal taxpayer standing at this time, especially since the suit in *Crampton* did not involve a constitutional challenge to the municipality's actions. *Crampton*, 101 U.S. at 608, 101 U.S. 601.

however, stated that it also had to examine "whether these particular appellants satisfy the prudential requirements as well." *Id.* Specifically, the court of appeals examined "whether these appellants have sustained a proximate, individual, and addressable injury, *based solely upon their status as municipal residents and taxpayers.*" *Id.* (emphasis added). The court of appeals determined that the appellants failed to meet prudential requirements for standing because they were taxpayers solely resting their claim of relief on the rights and interests of a third party, and that the entity most likely to have suffered injury—business contractors or construction workers—did not join the complaint. In that respect, the court stated that the appellants were asserting a "generalized grievance" that might have been "shared in substantially equal measure by all or a large class of citizens." *Id.* at 649. *See also Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 298 n. 2 (3d Cir.2003) (court of appeals denied standing to the plaintiffs on the basis of their status of taxpayers, finding that their suit amounted to a generalized grievance and stating that "the only acknowledged exception to this rule arises when a plaintiff challenges a government expenditure as violating the establishment clause.").

## III. Plaintiff Does Not Have Standing

■ Whether a litigant has standing "often turns on the nature and source of the claim asserted." *Warth v. Seldin*, 422 U.S. at 500, 95 S.Ct. 2197. The United States Supreme Court directed lower courts "to determine whether there is a logical nexus between the status asserted and the claim sought to be adjudicated." *Cohen*, 392 U.S. at 102, 88 S.Ct. 1942. In this case, plaintiff brought suit on the basis

of his status as a citizen and taxpayer of Allegheny County. Pl.'s Compl. ¶ 2. Plaintiff asserts that private entities violated federal statutory antitrust laws in a manner that deceived county and municipal leaders and forced Allegheny County and the Sports & Exhibition Authority to enter into unconscionable lease terms with the Steelers, whereby the Steelers illegally received revenue generated by Heinz Field that plaintiff contends should be reserved to the public fisc. *Id.* ¶¶ 58–60, 64. Plaintiff requests defendants to pay Allegheny County treble damages for the alleged antitrust violations, and further requests the court to allow Allegheny County to void the Heinz Field lease at its discretion. The only relief plaintiff seeks to recover on his own behalf are attorney fees and litigation costs.

Under these factual circumstances, plaintiff is essentially bringing derivative claims on behalf of Allegheny County and the Sports & Exhibition Authority. Plaintiff does not allege he was injured in any way by Allegheny County or the Sports & Exhibition Authority. In fact, plaintiff alleges that he and the other taxpayers of Allegheny County were "willing to build a new football stadium" for the Steelers and "to agree to lease terms that allowed the franchise to field a competitive team while remaining profitable." *Id.* ¶ 64. Plaintiff contends, however, that defendants' actions "forced" Allegheny County to pay far more tax revenue than what the taxpayers, himself included, expected to contribute toward the Steelers becoming "a competitive team while remaining profitable." *Id.* Thus, under the allegations in plaintiff's complaint, Allegheny County and the Sports & Exhibition Authority are characterized as victims beholden to defendants in order to keep the Steelers in Pittsburgh.[4]

4. Interestingly, however, now that Allegheny County and the Sports & Exhibition Authority

have decided not to join plaintiff's case, *see* Doc. No. 15, plaintiff states that Allegheny

Plaintiff's allegations, taken as true for purposes of defendants' motion to dismiss, do not give rise to standing in this case. The court will assume for purposes of defendants' motion that plaintiff alleged a sufficient "injury," i.e., that plaintiff's tax dollars were improperly expended on the disputed practice. *See Rocks,* 868 F.2d at 648 (determining without discussion municipal taxpayers suffered a sufficient injury under Article III); *see also United States v. New York,* 972 F.2d 464, 470 (2d Cir.1992) ("we presume a municipal taxpayer's relationship to the municipality is 'direct and immediate' such that the taxpayer suffers concrete injury whenever the 'challenged activity involves a measurable appropriation or loss of revenue.' "); *Cammack v. Waihee,* 932 F.2d 765, 770–71 (9th Cir.1991) ("municipal taxpayer standing simply requires the 'injury' of an allegedly improper expenditure of municipal funds"); *District of Columbia Common Cause v. District of Columbia,* 858 F.2d 1, 5 (D.C.Cir.1988) ("[w]hen a municipal tax-

payer can establish that the challenged activity involves a measurable appropriation or loss of revenue, the injury requirement is satisfied.").[5] The court also accepts *for purposes of the motion to dismiss* that plaintiff's injury could be redressed by a favorable decision finding that the stadium lease was voidable at Allegheny County's discretion. *Cammack,* 932 F.2d at 772 (injunction ceasing government's expenditure on disputed practice sufficient to redress plaintiff's injury). Plaintiff does not have to demonstrate that his taxes will be reduced as a result of a favorable judgment. *See District of Columbia Common Cause,* 858 F.2d at 5 ("[b]y enjoining an illegal expenditure, the court can redress the taxpayer's injury caused by the misuse of public funds and ensure that the funds will be devoted to lawful purposes of possible benefit to the taxpayers.").

The court, however, cannot find that plaintiff's injury is "fairly traceable to the conduct" of defendants. *Allen v. Wright,* 468 U.S. 737, 757, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).[6] Plaintiff's injury, as

---

County and the Sports & Exhibition Authority have joined into an "unholy alliance" with defendants. Pl.'s Br. (Doc. No. 14 at 14). Neither Allegheny County nor the Sports & Exhibition Authority are defendants to this action.

5. The court "assumes" that plaintiff has suffered the requisite injury only because the proceedings are at the motion to dismiss stage. Plaintiff directs the court's attention to paragraphs 54–57 in his complaint in an attempt to demonstrate a sufficient "injury" for purposes of establishing standing. The court notes that at this stage in the proceedings, plaintiff's allegations are sufficient to establish a sufficient injury under existing decisional law. Plaintiff did allege that tax money has been funneled to the Steelers as a result of defendants' disputed conduct. Pl.'s Compl. ¶ 64. Plaintiff's allegations, however, for the most part, are devoted toward speculative future injuries county taxpayers might incur, such as: (1) possible major repairs and improvements over the life of the 30–year stadium lease; (2) the possibility that the Steelers might not contribute $2.9 million annually to

the stadium's capital reserve fund starting in 2017; and (3) the fact that the Steelers' lease "provides no guaranty" that the Sports & Exhibition Authority will receive sufficient revenue to fund its $650,000 annual obligation to the stadium reserve fund. In this regard, plaintiff might have difficulty demonstrating a sufficient "concrete and particularized" injury that is "actual or imminent" were this case to proceed. *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130 (because standing is not a mere pleading requirement "but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation.").

6. The Supreme Court noted that the "fairly traceable" and "redressability" requirements are identical in situations where the relief requested by the litigant is simply the cessation of the allegedly illegal conduct. *Allen,* 468 U.S. at 759 n. 24, 104 S.Ct. 3315. Plaintiff's complaint in this case requests relief

demonstrated above, is that his tax dollars are allegedly being improperly spent on a disputed practice. Plaintiff in effect alleges that defendants committed an antitrust violation that caused *Allegheny County* to spend tax dollars in order to keep the Steelers in Pittsburgh. In this respect, however, plaintiff's theory is missing a critical link in the chain of causation. Defendants are not the entity that allegedly improperly distributed plaintiff's tax dollars. Defendants are not a municipal or state body, they do not have any characteristics of such an entity, and they certainly do not have the ability to levy and collect taxes from the citizens of Allegheny County. While the standing doctrine may be an elastic concept, extending the doctrine to fit plaintiff's theory would stretch standing beyond the breaking point.

If plaintiff's theory was accepted by this court, any municipal taxpayer could bring suit against any private entity that receives tax dollars from a local government by arguing that the entity violated federal law. Federal courts could be flooded with a litany of claims by municipal taxpayers seeking to sue private entities as long as the litigant could successfully allege a nexus between a violation of federal law and the entity's receipt of municipal tax dollars. This outcome, however, would run anathema to the constitutional standing requirement that the injury alleged be "fairly traceable" to the actions of the defendant(s). In such cases, and in the present case where plaintiff's suit was brought to redress the allegedly improper distribution of local tax dollars to private entities, the missing link is that the litigant, while disputing the judgment of the local government entity, did not sue the local government entity that actually made the tax distribution. As a result, plaintiff cannot satisfy the causation prong because his alleged injury is not "fairly traceable" to the conduct of defendants, but rather "results from the independent action of some third party not before the court.' " *Allen*, 468 U.S. at 757, 104 S.Ct. 3315.[7]

beyond the cessation of allegedly illegal conduct. Here, plaintiff requests upwards of $600 million in damages to be awarded presumably to Allegheny County for defendants' allegedly illegal conduct. In this situation where the "relief requested goes well beyond the violation of law alleged," the court is required to address the "fairly traceable" and "redressability" prongs independently. *Id.* at 753 n. 19, 104 S.Ct. 3315. According to the Supreme Court, the "fairly traceable" prong "examines the causal connection between the assertedly *unlawful conduct* and the *alleged injury,*" while the "redressability" prong "examines the causal connection between the *alleged injury* and the *judicial relief* requested." *Id.* (emphasis added).

7. Even if Allegheny County was a party to the lawsuit, plaintiff would have difficulty meeting the more demanding requirements of antitrust standing. These requirements are summarized in the authoritative antitrust treatise as requiring plaintiff to show:

(1) that the acts violating the antitrust laws caused—or in an equity case, threatened to

cause—the private plaintiff injury in fact to its "business or property;" (2) that this injury is not too remote or duplicative of the recovery of a more directly injured person; (3) that such injury is "antitrust injury," which is defined as the kind of injury that the antitrust laws were intended to prevent and "flows from that which makes defendants' acts unlawful;" and, in a damage case, (4) that the damages claimed or awarded measure such injury in a reasonably quantifiable way.

II Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law § 335a (2d ed.2000). *See In re Lower Lake Erie Iron Ore Antitrust Lit.*, 998 F.2d 1144, 1165–66 (3d Cir.1993) (*citing Associated General Contractors, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983)). In this case, plaintiff has not alleged any facts that his "business or property" was injured as a result of a violation of antitrust laws. As indicated above, he does not allege any other connection with defendants other than the fact that he pays taxes to Allegheny County which entered into a lease relationship with defendants. According to Areeda and Hoven-

Plaintiff's suit fails under the prudential limitations of the municipal taxpayer doctrine as well. Every opinion reviewed with respect to municipal taxpayer standing, including those cited by the United States District Court for the Southern District of Ohio in *Ohio ex rel. Davis v. National Football League*, Civ. No. 1:03–CV–00355, slip. op. (S.D. Ohio filed Feb. 9, 2004), examine the twin requirements that (1) the litigant sue a *government* entity and (2) request equitable relief. *See, supra*, at 10.[8] Plaintiff's claims clearly do not meet the first requirement as no government entity has been sued. As to the second requirement, plaintiff is suing for more than equitable relief. Plaintiff is seeking millions of dollars in antitrust damages from thirty-three private entities—not for himself, but for the county which has declined to participate in this litigation. The court respectfully disagrees with the rationale of the district court in *Davis* that the doctrine of municipal taxpayer standing should be extended under these factual circumstances. The lesson of *Frothingham* and subsequent decisions addressing municipal taxpayer standing is that, because of the "peculiar relation of the ... taxpayer to the [munici-

pal] corporation," the taxpayer is entitled to bring suit for an injunction against a local government entity to challenge unlawful municipal expenditures. 262 U.S. at 486–487, 43 S.Ct. 597. That relationship does not extend to permit municipal taxpayers to sue private defendants that receive government funds and to challenge the allegedly illegal actions of those private defendants.

Additionally, plaintiff failed to allege any connection with defendants beyond his status as a municipal taxpayer. *Rocks* suggests that plaintiff is required to establish more than an injury received "solely" on his status as a municipal taxpayer in order to overcome prudential standing limitations. Otherwise, according to the court of appeals, plaintiff's complaint amounts to a "generalized grievance" that may be "shared in substantially equal measure by all or a large class of citizens." Here, plaintiff alleges no facts connecting him to defendants other than the fact that he is a taxpayer of Allegheny County. In fact, plaintiff's counsel reinforced during oral argument that plaintiff's only connection to the suit was that he is a municipal taxpayer. *See* Transcript of Proceedings on Oc-

kamp: "The courts have correctly refused to allow treble damage actions by a taxpaying property owner or citizen against defendants whose alleged antitrust violation injured the municipalities in which the plaintiff lived." AREEDA & HOVENKAMP, ANTITRUST LAW § 353b. Furthermore, there is a more "direct victim of the alleged antitrust violation" and there would be a "*potential for duplicatative recovery* or complex apportionment of damages" were plaintiff's suit to be successful. *In re Lower Lake Erie*, 998 F.2d at 1165. Allegheny County is the entity that has allegedly been injured by defendants' conduct, and the county could possibly (although it chose not to join plaintiff's case) bring suit against defendants as well. Finally, Areeda and Hovenkamp address plaintiff's "unholy alliance" argument by stating that standing "should be denied to the private plaintiff who alleges that the [local government's] judgment was contaminated by

'political influence,' bribery, membership in a conspiracy or the like." AREEDA & HOVENKAMP, ANTITRUST LAW § 353b.

8. In *Davis*, a municipal taxpayer in Cincinnati brought suit against the National Football League and its member clubs and asserted claims similar to those made by plaintiff in this case. In that decision, the district court determined that the plaintiff had standing under the doctrine of municipal taxpayer standing to pursue her antitrust claims against the defendants. During oral argument in the present matter, counsel for defendants informed the court that the district court in Ohio granted a motion to amend the complaint to substitute the commissioners of Hamilton County, Ohio, as plaintiffs. According to the representation of defendants, the plaintiffs in *Davis* no longer rely upon municipal taxpayers standing.

tober 8, 2004 ("Tr.") at 15. ("Mr. Warnock is standing as a taxpayer[.]"). This concession by plaintiff's counsel permits this court to conclude that there is no need for additional information in support of plaintiff's standing or a need for an evidentiary hearing to determine standing. The standing on which plaintiff is relying relates solely to his status as a municipal taxpayer.

 Plaintiff's final possible basis for standing is third party standing. The rule prohibiting litigants from asserting the rights of third parties is not absolute. *Kowalski,* 543 U.S. at ——, 125 S.Ct. 564. Under limited circumstances a litigant may bring an action on behalf of a third party where the following three criteria are met: (1) the litigant suffered an injury in fact giving him or her a sufficiently concrete interest in the outcome of the issue; (2) the litigant has a close relationship to the third party; and (3) there exists some hindrance to the third party's ability to protect his own interests. *Id.*[9] In this case, plaintiff does not allege a special relationship (such as an attorney-client relationship, *see Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989), or a doctor-patient relationship, *see Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965)) with Allegheny County. Neither does plaintiff allege in his complaint or submissions to this court that Allegheny County is unable to assert its own rights in this case. In fact, as stated above, Allegheny County and the Sports & Exhibition Authority sent letters to plaintiff stating that neither entity wanted to join plaintiff's suit against defendants. *See* Doc. No. 15.

Plaintiff failed to allege sufficient facts upon which this court can find that he has standing to pursue his claims. Plaintiff does not have standing under the constitutional standing requirements of Article III of the United States Constitution. Alternatively, plaintiff is unable to overcome prudential barriers to standing with respect to his claims. In football terms, plaintiff is like a spectator in the stands who is unable to challenge a disputed call by the referee because he does not hold the head coach's red challenge flag. Accordingly, plaintiff's complaint will be dismissed for lack of standing.

### *Conclusion*

**AND NOW,** this 9th day of February 2005, upon consideration of the motion by defendants National Football League and its member clubs (the "NFL"), including Pittsburgh Steelers Sports, Inc. (the "Steelers"), and Philadelphia Eagles Limited Partnership (the "Eagles") (collectively referred to as "defendants"), to dismiss the complaint of plaintiff Robert C. Warnock ("plaintiff" or "Warnock") for lack of standing (Doc. No. 5), **IT IS ORDERED** that defendant's motion is **GRANTED.** The clerk shall mark this case closed.

---

**9.** The United States Supreme Court indicated, however, that third party standing has generally been granted in only two types of cases: (1) First Amendment cases; and (2) cases "to litigate the rights of third parties when enforcement of the challenged restriction *against the litigant* would result indirectly in violation of third parties' rights." *Id.* (emphasis in original) (*citing Warth,* at 422 U.S. at 510, 95 S.Ct. 2197).